BENJAMIN BRUNER, Appellee, v. WILLIAM WADE, Appellant.

1. **Testimony of Experts:** PROOF OF HANDWRITING: HYPOTHETICAL QUESTIONS: An expert in handwriting, having testified that the signature to a note was the genuine signature of the defendant, upon being shown several cards with the name of the defendant upon them, testified that none of them looked like his genuine signature. The witness was then asked if, in his judgment, the signatures on the cards did not appear more like the genuine signature of the defendant than the one on the note. *Held*, that there being no evidence that the signatures on the cards were genuine, the defendant could not be said to have been prejudiced by the refusal to allow the witness to answer such question.

2. **Evidence:** DECLARATIONS. Question having been raised as to the ability of the plaintiff to loan to the defendant the amount of the note in controversy at the date thereof, *held*, that the testimony of the person with whom the plaintiff boarded as to a conversation between her and the plaintiff, by way of explanation of the latter obtaining credit for his board about that date, was not incompetent, because the defendant was not present at such conversation.

3. **Testimony of Experts:** WEIGHT AS EVIDENCE: INSTRUCTION TO JURY. The plaintiff having testified that he saw the defendant sign the note in controversy, and the testimony of the defendant being that he never signed it; *held*, that an instruction to the jury, that the testimony of experts upon such question ought not to overthrow the positive and direct testimony of a credible witness, who testifies from his personal knowledge, but that in case of conflict between the evidence of witnesses about the matter on which the opinion is given it is important as corroborative evidence, was not erroneous.

*Appeal from Tama District Court.*—HON. G. M. GILCHRIST, Judge.

WEDNESDAY, FEBRUARY 10, 1892.

ACTION on a promissory note. The answer presents a denial of the genuineness of the signature. There was a judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

J. D. *Nichols* and *Struble & Stiger*, for appellant.

W. H. *Stivers* and *S. M. Endicott*, for appellee.

GRANGER, J.—I. The issue is as to the genuineness of the signature to the note. The plaintiff gave testimony to the effect that the signature to the note was that of the defendant, and put on the witness stand R. H. Moore, who, after showing his competency to testify as an expert as to handwritings and that he was acquainted with the handwriting of the defendant, and had been for some years, testified that the signature to the note in suit was in his opinion genuine. He was afterwards, on cross-examination, shown several cards with the name of William Wade written thereon, and he testified that, in his opinion, some of them were genuine signatures of Wade, while some of them resembled it. As to a card (Exhibit 7) he said: "That number 7, I think, has some of the features of his writing, more than others have. None of them look like his genuine signature. (Witness handed Exhibit number 9.) There is similarity between the signature shown on Exhibit number 7 and the signature on the note." The following question was then put to the witness: "I will ask you if, in your judgment, the signatures on the cards don't appear more like his genuine signature than the one on the note, in your judgment?" The answer was excluded on the objection of the plaintiff. The argument against the action of the court in excluding the question is "that, if it had been answered affirmatively, and it had been afterwards shown that the signatures, or some of them, were genuine signatures of William Wade, the answer would have effectually disposed of the testimony of the witness as to his opinion with reference to the genuineness of the signature to the note." The statement of the fact from which prejudice might have resulted is

*Margin note:* 1. TESTIMONY of experts: proof of handwriting: hypothetical questions.

merely hypothetical, as "if  *   *   *   it had been
afterwards shown that the signatures" on the cards,
"or some of them, were the genuine  signatures of
William Wade," it would have disposed of his testi-
mony, etc.  There is no showing in the record that any
of the signatures on the cards were genuine, and we are
not to assume such a fact as a basis for the complaint.
The rule is that prejudice must appear to justify a
reversal, and it does not appear from a fact merely
assumed for the purpose of argument.

II. One Miss Reed was a witness for the plaintiff
and gave testimony as to a conversation with the
2. EVIDENCE:    plaintiff, who, with some of his family,
declarations.   had boarded with her, and also as to
payment for the board. The conversations were in
the absence of the defendant, and the court refused,
on motion of the defendant, to strike out the testimony
as hearsay.  The ruling is not erroneous.  The trial
led to inquiries as to the financial affairs of the plaintiff,
and as to his obtaining a short credit for his board
bills with the witness; the idea being that the plaintiff
was not in a condition financially, about that time,
to furnish to the defendant the money which was
the consideration for the note.  The testimony of Miss
Reed seems to have been explanatory, or showing the
reasons why the credit was extended.  It seems to us,
under the circumstances, to have been proper.  More
than this, we do not think it could have been preju-
dicial, because there was other uncontradicted evidence
to the same point.  The facts in this respect do not
seem to be in dispute.

III. The testimony of the appellee shows that the
note in suit was signed by the appellant in his (appel-
lant's) store on the fifteenth of May, 1888.  The signa-
ture to the note is with black ink.  The appellant tes-
tified that he had only blue ink in his store May 15,
1888.  He also stated:  "Used blue ink in my store
May 15, 1888.  Book shown me is my ledger.  Had no

other kind from first day of April to first day of July, 1888." He was then asked: "You may state whether all the entries that were made in your books were made only with the ink you had in your store at that time." The answer was excluded as incompetent or immaterial. The following is the testimony immediately following the ruling: "No black ink in my store fifteenth of May. Blue ink in use in store. No black ink in store at all on that day." The question might well have been answered; but it is quite difficult to see how it could have strengthened the testimony in favor of the appellant. There is no ground to question the state of the evidence on that point—that is, as to the ink with which the entries were made in the books. Such entries would not, however, prove that there was no black ink in the store. It would prove that blue ink was being used with the books. There is no prejudicial error in this respect.

IV. The court gave the following instruction:

"4. Witnesses have testified as to their opinion respecting the genuineness of the signature to the note in suit, based upon their acquaintance with and knowledge of defendant's genuine signature. You will carefully consider the same, and give it the weight and value .it is justly entitled to, taking into account the experience and knowledge of the witnesses about the matter concerning which the opinion is given. Such evidence, however, is regarded as unsatisfactory. It is, in fact, the result of a comparison of the signature in question with the genuine signature of the defendant, as the same is remembered and impressed upon the mind of the witness whose opinion is so given. *Such evidence ought not to overthrow positive and direct testimony of a credible witness who testifies from personal knowledge. It should not be disregarded in any case without good and sufficient reasons, such as would entitle you to disregard other evidence. In case of a conflict*

3. TESTIMONY of experts: weight as evidence: instruction to jury.

*between the evidence of witnesses about the matter on which the opinion is given, it is important as corroborative evidence.*"

"Special objection" is made to the italicized portion of the instruction, and it is said in argument: "What application has the first sentence of the language objected to to any evidence introduced in the case? Bruner had testified that he saw Wade sign the note in his (Wade's) store. Wade had testified that he never signed it." We think, as does the appellant in argument, that one of them has wilfully testified falsely. In view of the record there is no opportunity for their being mistaken, and it is in view of this situation of the case that the language is used. It is as applicable to one party as to the other, and affords no ground for complaint by either, and we fail to see how it is misleading.

Of the clause of the instruction immediately following the one just commented upon it is said: "Just what the court meant by this language it is difficult to determine." It is then urged that by it the same rule is to be applied to the witnesses, Moore and Bowen, to determine the weight and credibility of their evidence, as should be applied to that of Bruner and Wade. Moore and Bowen gave testimony as to matters of which they admit they might be mistaken. It does not appear to us that such was even the probable effect of the instruction. The difficulty lies in not giving weight to all the court said, but in selecting a single clause for criticism. The thought of the two clauses of the instruction is to guard the jury against, on the one hand, giving to such testimony too much weight, and, on the other, against disregarding it for insufficient reasons. No error is apparent on the face of the instruction in the particulars of which complaint is made, and, if a more specific statement was desired, it should have been asked.

The language of the instruction, that "it is important as corroborative evidence," is not erroneous in that it gives undue prominence to the testimony of Bruner and Wade. Their testimony was of peculiar and great importance, and the language properly specifies the bearing of the expert testimony on the case.

These are all the questions important to be considered, and the judgment is AFFIRMED.

Mr. Justice KINNE took no part in this case.