| 91 | 448 |
| 91 | 327 |
| 91 | 448 |
| 93 | 339 |
| 91 | 448 |
| 105 | 696 |
| 91 | 448 |
| 135 | 292 |
| 135 | 203 |
| 135 | 327 |

ALBERT H. BROWNING, Appellant, v. GEORGE W. GOSNELL et al.

2 **Alteration of Note by Subsequent Signatures.** Where
7 signatures are added without the knowledge and consent of the maker
8 he is released, but the subsequent signers are not.

SAME. The maker should be allowed to say, over the objection of the
6 subsequent signers, whether he did not promise to pay the note after the others had signed it.

11 **Experts on Writing: Cross-examination.** Such witnesses
12 may be tested by having them select genuine from spurious signatures.

**Instructions Construed** and held to charge properly that the jury
9 could examine admitted signatures as a standard of comparison, and
10 genuine ones mixed with spurious ones, to get at the weight of the expert testimony.

**Impeaching Party: Foundation.** It is improper to show, by
3 way of impeachment, that a *party* to the record made statements at
4 variance with his testimony, unless his attention is first called to time
5 and place, if the absence of such foundation is objected to.

**Return of Original Notice: Conclusiveness.** The officer's return that such notice has been served by true copy is not conclusive. Setting default aside where original cited for one day and the
1 copy for one twenty days later, and where the defendant was misled, will not be disturbed.

*Appeal from Benton District Court.*—HON. JOHN R. CALDWELL, Judge.

SATURDAY, MAY 26, 1894.

ACTION on a promissory note. Trial to a jury. Verdict and judgment for defendants. Plaintiff appeals.—*Affirmed in part and reversed in part.*

*Charles I. Vail* and *W. P. Whipple* for appellant.

*G. W. Burnham* and *Rickel & Crocker* for appellees.

KINNE, J.—I. This action was brought on a promissory note for two hundred dollars, dated April 17, 1880, and due October 17, 1880, bearing the signatures of appellees, and payable to F. C. Gosnell or bearer. The suit was brought October 4, 1890, and an original notice issued, requiring defendants to appear at the January term, 1891, beginning on January 5, 1891. As shown by the officer's return, this notice was duly served on all of the defendants. It appears without conflict, that the copy of the notice left with defendants Park and Gosnell by the officer cited them to appear and defend on or before noon of the second day of the next term of said court, commencing at Vinton, Iowa, on the twenty-fifth day of January, 1891. The term of court, in fact, commenced on the fifth day of January, 1891, instead of the twenty-fifth. January 7, 1891, the default of Park and Gosnell was taken for want of an appearance, and judgment entered the same day against them. At or prior to the time fixed for their appearance in the copy or notice left with them, Park, with his attorney, Bowen, came to Vinton to make defense to the action, and saw G. W. Burnham, attorney, and found that it was too late—that court had adjourned. Within eight days thereafter, defendants Park and Gosnell filed a petition to set aside said default, and for a new trial. April 19, 1892, a trial was had on the issues made in such petition, as amended, and the default and judgment set aside. The case was then tried on the merits as to all the defendants. The defense of Gosnell and Park was, that after the note was executed and delivered to the payee the same was materially altered, by affixing thereto, by the procurement of the payee or Reynolds, the signatures of Park and McFar-

lane, without said G. W. Gosnell's consent or knowledge, and that the signature of McFarlane was so affixed without the knowledge or consent of Park; that G. W. Gosnell executed and delivered the note as sole payor, and, without any new or further consideration, the then holder procured the names of Park and McFarlane to be signed thereto. McFarlane, in addition to relying upon the above facts, pleaded that the signature to said note, purporting to be his, was not his genuine signature. Other defenses were made, not material to this appeal. Plaintiff denied generally. On the trial, the jury found for all of the defendants, and also made answer to certain special interrogatories, as follows: "1st int. Do you find that the names of Park and McFarlane were attached to the note in controversy after the same had been executed and delivered by defendant Gosnell to F. C. Gosnell? Answer. Yes. 2d int. Was there any other consideration paid for the making and execution of said note by Park or McFarlane, if you find he signed same, than that passing from F. C. Gosnell to G. W. Gosnell? Answer. No. 3d int. Were the names of D. H. Park and John McFarlane attached to said note without the knowledge or consent of G. W. Gosnell, the maker? Answer. Yes. 4th int. Was the name of John McFarlane attached to said note after same was executed and delivered, without the knowledge or consent of D. H. Park, defendant? Answer. Yes. 5th int. Did either Park or McFarlane receive any consideration, at any time, for signing said note? Answer. No." Plaintiff excepted to said interrogatories, when given.

II. It is urged that the court erred in setting aside the default as to Gosnell and Park; that the return of the officer is conclusive. We do not understand it to be claimed by appellant that this court has ever decided that the return of the officer in such a case is conclusive. No case is cited which so holds.

The most that has been said is that the return should
be "deemed strong evidence of the facts as to which
the law requires him to certify, and should ordinarily
be upheld, unless opposed by clear and satisfactory
proof." *Wyland v. Frost*, 75 Iowa, 211, 30 N. W.
Rep. 241; *Irions v. Manufacturing Co.*, 61 Iowa, 407,
16 N. W. Rep. 349; *Ketchum v. White*, 72 Iowa, 193,
33 N. W. Rep. 627. We are not inclined to hold that
the officer's return is conclusive in such a case. It is
claimed, and we think the evidence abundantly shows,
that these defendants were misled, to their prejudice,
by the mistake made by the officer in the copy of the
notice left with them. In this respect, it is unlike *Breen
v. Kuhn*, 91 Iowa, 325, 59 N. W. Rep. 344. They relied
upon it, and, for aught that appears, they had a right
so to do. Presuming that the date in the copy was
correct, they took the proper steps to defend the case.
One of them went with an attorney from Carroll county
to Vinton, and when they arrived there, they ascertained
that court had adjourned; that the date in the copy
was wrong. It was clearly indicated in *Irions v. Man-
ufacturing Co.*, 61 Iowa, 406, 16 N. W. Rep. 349, that
such a showing would be a sufficient averment of
unavoidable casualty or misfortune. The defense inter-
posed was meritorious as to both of these defendants.
An application to set aside a default is, of necessity,
largely addressed to the discretion of the trial court.
*Jean v. Hennessy*, 74 Iowa, 350, 37 N. W. Rep. 771;
*Ordway v. Suchard*, 31 Iowa, 487; *Manufacturing Co. v.
Kleigel*, 70 Iowa, 578, 31 N. W. Rep. 878. There was
no error in setting aside the default.

III. The evidence is clear that, when G. W. Gos-
nell delivered the note to the payee therein, no other
names were signed to it; that there was no agree-
ment or understanding that any other persons'
names should be placed thereon. After its exe-
cution and delivery, the payee or his agent procured

Park to sign the note, without the knowledge or consent of Gosnell, the maker. So, also, the name of McFarlane was attached to the note without the knowledge or consent of either the payor or Park. The defenses, then, were fully established as to Gosnell and Park, and the judgment, as to them, must stand, unless there was prejudicial error, as to them, in the rulings of the court as to the evidence, or in the giving or refusing of instructions.

IV. The defendant Gosnell, while a witness on the stand, was asked if he did not state, some time after executing the note, that he had procured Park to sign the note, and thought McFarlane had signed it. The question was objected to as immaterial, irrelevant, and incompetent, as against Park and McFarlane, and because no foundation had been laid for its introduction, and no time and place fixed. The objection was sustained, and plaintiff excepted. It is not claimed by appellant that the proposed testimony would be binding on Park and McFarlane, but it is insisted it was proper as to the witness Gosnell, who was also a defendant. In view of the fact that it is not now contended that the evidence was admissible as against Park and McFarlane, we need only consider the question presented by the part of the objection wherein it is claimed that no foundation had been laid for such testimony. If the purpose of the proposed evidence, as against Gosnell, was to impeach him, by showing that he had made statements out of court in conflict with his testimony in chief, it was necessary to lay the proper foundation therefor by calling his attention to the time and place when and where the statements were made, and this is true even when the witness is a party to the litigation. It is said in *Conway v. Nicol*, 34 Iowa, 536: "While the declaration, out of court, of a party to the record, may be introduced as an admission of a fact, yet, in order that such declaration

may operate as an impeachment of his character as a witness, his attention must be directed to the time, place, and person involved in the supposed contradiction.'' The rule seems to be different when the proposed evidence is in the nature of an admission of a party to the record, and it is not intended for impeaching purposes. *Lucas v. Flinn,* 35 Iowa, 14. And see *State v. Hamilton,* 32 Iowa, 574. The rule in some states seems to be that no foundation need be laid in any case where the witness is a party, and it is sought to show that he has made statements out of court in conflict with his testimony. *Collins v. Mack,* 31 Ark. 694; *Water Co. v. Stewartson,* 96 Pa. St. 436; Thompson on Trials, section 497. Whatever may be the rule elsewhere, under the holding in *Conway v. Nicol, supra,* the testimony, if for the purposes of impeachment, was not proper, as the witness' attention was not called to the time, place, or person involved in the claimed contradiction. Inasmuch as the objection directed especial attention to the fact that defendant construed the question as one seeking to elicit testimony for the purpose of impeachment, and as counsel for appellant did not claim any other effect for it, the court might properly assume that such was its purpose, and hence the objection was rightfully sustained. Had counsel indicated to the court, by the form of the question or otherwise, that the evidence was not for the purpose of impeachment, no doubt the objection on that ground would have been overruled. In this view there was no error in the ruling.

V. Error is assigned on the ruling of the court on a question asked G. W. Gosnell, on cross-examination, as to whether he did not promise to pay the note after all the names had been signed to it. The objection to this question was made by Park and McFarlane—that as to them it was immaterial, irrelevant, and incompe-

tent. The objection was sustained. We think, in this, the court erred. True, Park and McFarlane could not be affected by reason of any promise made by Gosnell to pay the note after they became parties to it. As parties to the paper, without consideration, and after it was fully executed and delivered, and in the absence of any agreement made when the note was executed that they should sign it, their liability could in no way depend on a promise to pay it, made by the payor after they had signed it. But the evidence was admissible as against Gosnell. If, after all the names were signed, he agreed to pay the note, there is no good reason why he should be permitted to now avail himself of the defense that Park and McFarlane signed it after it was delivered as a completed instrument, and without his knowledge or assent. As the evidence was admissible for one purpose, the objection should have been overruled, and the jury directed, by proper instructions, that the offered evidence could not be considered by them, as affecting Park and McFarlane. *Parkhill v. Town of Brighton*, 61 Iowa, 105, 15 N. W. Rep. 853; *Marion v. R'y Co.*, 64 Iowa, 573, 21 N. W. Rep. 86; *Allison v. R'y Co.*, 42 Iowa, 277; *State v. Miller*, 81 Iowa, 72, 46 N. W. Rep. 751.

VI. Complaint is made as to questions asked witness Browning against plaintiff's objections. It is insisted that the questions were immaterial and irrelevant. As to some of the issues, this is doubtless true. But one of the defenses was that Browning was not the owner of the note sued on. In view of this, and for the purpose of showing the relation existing between plaintiff and Reynolds, who defendants claimed owned the note, much latitude was properly allowed in the examination of Browning, and we do not think the court erred.

VII. It is said the court erred in instructing that it was admitted that Reynolds acted as plaintiff's

agent. If it be conceded that it was error, still it is without prejudice, in view of the special findings.

VIII. The court gave to the jury an instruction as follows: "It is claimed by the defendants that after the execution and delivery of the note of suit by G. W. Gosnell, as sole payor, that one, then the holder of said note, without any further or additional consideration, procured the signature of D. H. Park to said note, and had the name of John McFarlane attached thereto. A promisory note imports that it was made upon a sufficient consideration, but if the defendants prove, by a fair preponderance of the evidence, that after the execution and delivery of the note in suit by G. W. Gosnell, as the sole payor thereof, that one, then the holder of said note, without any further or additional consideration, procured the signature of D. H. Park, and had the name of John McFarlane attached thereto, the verdict must be in favor of said defendants, Park and McFarlane."

We think this was error. Under the decisions of this court, if a note be fully executed and delivered without any agreement that further signatures thereto shall be obtained, and another person signs the same without the knowledge or consent of the previous signers, this is such a material alteration as relieves the previous signers from liability, but such subsequent signer shall become liable thereon as a maker. *Dickerman v. Miner*, 43 Iowa, 509; *Hamilton v. Hooper*, 46 Iowa, 516. Under the rule of the cited cases, Park and McFarlane, by signing the note, released Gosnell, and themselves became makers of the note, and liable as such, unless otherwise released. Now, it is shown that McFarlane signed some time after Park, and without his knowledge or consent. Hence, Park would be released. The instruction, therefore, in so far as it tells the jury that McFarlane would be released because he

signed the note after it had beên fully executed, and without consideration moving to him, is erroneous.

IX.  Error is assigned in giving of instructions seven and ten.  In the seventh instruction the jury were told, in substance, that before they could find against McFarlane they must be satisfied, from a preponderance of the evidence, that he signed the note, or authorized someone to sign it for him, and that in determining that question they had a right to make comparison between the signature on the note and the signatures of McFarlane admitted to be genuine, and in evidence.  In the tenth instruction the jury were told that a certain paper, marked "Exhibit G," and slips marked "Exhibits 43 to 50," inclusive, were admitted as evidence,—not as standards of comparison, but for the purpose of enabling defendants to test the knowledge and ability of the witness McQuinn.  Taking these instructions together, it seems clear that the last one should be treated as limiting or qualifying the seventh instruction, and in this view they are not objectionable.  Appellant contends that by the instructions the jury were authorized to use Exhibits G and 43 to 50 for purposes af comparison.  We do not think the jury could have so understood the instruction.  These exhibits properly went to the jury as a part of the evidence introduced in the case.  When they were admitted, the court stated it was solely for the purpose of enabling defendants to test the skill of witness McQuinn.

X.  It is urged that exhibits G and 43 to 50 were improperly admitted.  This exhibit G is a paper on which the name of "John McFarlane" was written several times, on alternate lines, by himself, and the same name was written on intervening lines by another person.  Exhibits 43 to 50 were slips of paper having written thereon the name "John McFarlane,"—some of them written by Mc-

Farlane, and some by other persons. This exhibit G
and these slips were submitted to the expert witnesses,
who were asked to point out the genuine signature
of McFarlane. Counsel for appellant argue with ability
that such signatures, made for the purpose of the trial,
are not material or relevant for any purpose. This
question has never been passed upon by this court.
In *Bruner v. Wade*, 84 Iowa, 698, 51 N. W. Rep. 251,
such slips appear to have been used on cross-examina-
tion, but this point was not decided. In some states,
such signatures, written by a party other than the one
whose signature it purports to be, have been held inad-
missible for any purpose. *Rose v. Bank*, 3 S. W. Rep.
(Mo. Sup.) 876. In the case above cited, the decision
was placed largely on the ground that the other signa-
tures were designed to present a collateral issue. In
*Andrews v. Hayden's Adm'r*, 11 S. W. Rep. 428, the
court of appeals of Kentucky, held that, on cross-
examination, witnesses as to the genuineness of hand-
writing could not be required to pick out genuine
signatures when they were intermingled with spurious
ones. The court said: "They were executed with such
skill as to deceive any ordinary observer, or those hav-
ing no other experience than their familiarity with
their neighbor and his handwriting. Such writings
should have been excluded, because tending to obstruct
the proper administration of the law, and deceiving,
by the skill in their execution, the minds of honest
men." In *Harvester Co. v. Miller*, 72 Mich. 265, 40
N. W. Rep. 429, experts, after testifying as to the
genuineness of the signature in controversy, were cross-
examined, to test the value of their evidence, as to
other signatures, some of which were not genuine. The
court, in approval of this, say: "The object, evidently,
was to show the fallibility and unreliable character of
the testimony. * * * The sequel showed that the
opinions of the experts were of but little worth, and

we are not disposed to limit or confine the opportunities for testing and determining the accuracy and value of expert evidence." In *Insurance Co. v. Sheppard* (Ga.), 12 S. E. Rep. 35, writings written by persons other than the defendant were submitted to experts on cross-examination, and were admitted in evidence. The court said: "The purpose of the experiment was to show that the experts were not reliable; that they would mistake writing not done by Sheppard for writing which he had done. The whole object of the test would have been defeated, had other proof been required that the documents were genuine, before they could be used. By what color of right could defendant claim to see or know anything of them before the trial commenced? * * * The contents or completeness of the writings had no evidentiary relation to the hand in which they were written." We think it is proper, when a witness testifies to the genuineness of a handwriting or signature, to test the value of his evidence thoroughly, and for that purpose he may be asked to give his opinion as to the genuineness of signatures which are prepared for that purpose, and in the handwriting of any person. Opinions as to the genuineness of handwriting are, at best, weak and unsatisfactory evidence, and every reasonable opportunity should be afforded, on cross-examination, to test the value of the opinion of the witness, and we know of no better way than was resorted to in this case. Generally, testimony as to the genuineness of handwriting is the merest guesswork. Of necessity, it is admitted, because, often, no other evidence is attainable. But it should be open always to full investigation on cross-examination, for thus only can its utter unreliability, in many cases, be established.

XI. *As to defendant Park, the judgment below is affirmed; and, as to defendants Gosnell and McFarlane, for the reasons heretofore given, the judgment below must be* REVERSED.