## C. M. JACKSON, Appellant, v. F. O. ADAMS.

**Books of Account of Corporation:** FOR WHAT ADMISSIBLE. In an action on a non-negotiable note, made in consideration of certain corporate stock, where defendant pleaded as a counter-claim a note made by 1 the payee in consideration of stock in a kindred corporation, subsequently organized, and both parties used as evidence the books of the original corporation, all of the contents of the books which tended to enlighten the jury on the motive of the parties and their relations to each other in carrying on the corporations, was properly admitted.

CONDITION OF CORPORATION AS EVIDENCE. It was not error to 2 instruct the jury that they might consider the condition of the corporation at the time of the trial, so far as it might have a bearing on the agreement and transactions relating to the promissory notes in controversy.

**Opinion Evidence:** HANDWRITING: *Instructions.* Where witnesses have testified about the genuineness of a signature, both from comparison and from familiarity with the signature of the alleged 3 subscriber, it is proper to charge that, "evidence of this character being, in fact, the result only of a comparison of the controverted signature with the genuine signature of the defendant, as the same is remembered and impressed on the mind of the witness, whose opinion is so given, or with the other signatures proved to be those of defendant, it is regarded by the law as unsatisfactory, and such as ought not to overthrow the direct and positive testimony of a credible witness who testifies from personal knowledge."

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

## THURSDAY, DECEMBER 10, 1896.

·' ACTION at law upon a non-negotiable promissory note. There was a trial by jury, which resulted in a verdict for the defendant. The plaintiff appeals from a judgment on the verdict.—*Affirmed.*

*W. C. McArthur* and *C. L. Poor* for appellant.

*Seerley & Clark* for appellee.

ROTHROCK, C. J.—I. The note upon which the action is founded is for two thousand dollars. It is dated February 13, 1894, and payable six months after date. It is made payable to Ezra A. Brenizer only, and it is expressly stated in the note that "it is not negotiable." Brenizer, the payee, assigned the note to plaintiff, Jackson. The answer of the defendant sets up a want of consideration for the note, and also pleads a counter-claim, founded upon a promissory note, dated August 13, 1889, by which Brenizer promised to pay to the defendant, the sum of one thousand eight hundred and seventy-five dollars, with interest from date at the rate of eight per cent. per annum. The case was tried upon the issues thus made. There is really no question in the case that, if the note of one thousand eight hundred and seventy-five dollars is a valid instrument, as between Brenizer and the defendant, it is a complete discharge of any obligation of the defendant to pay the note upon which the suit was brought. In other words, the note executed by Adams being non-negotiable, and payable to Brenizer only, any legal defense against the note is available as against Jackson, the assignee.

We have stated the issues in a general way. It should be further stated that the plaintiff filed a reply, from which it appears that Brenizer gave the note of one thousand eight hundred and seventy-five dollars to the defendant for certain shares of stock in a corporation named the Tinkham Smoke Consumer Company, which Brenizer purchased from one Smith, and for which purchase Adams furnished the money, and the note was given to Adams by Brenizer. It is alleged in the reply that the purchase of the stock from Smith

for one thousand eight hundred and seventy-five dollars included also a promissory note of said corporation for one thousand four hundred and thirty-one dollars and seventy-three cents, payable on demand, and also certain claims or accounts owing to said company which had been assigned to Smith; that Brenizer delivered to the defendant the note of the corporation, and the said accounts and claims, as security for the payment of the note, for one thousand eight hundred and seventy-five dollars; and that it was verbally agreed between Brenizer and Adams that the first money paid to the corporation in its business should be applied towards the payment of the note for one thousand four hundred and thirty-one dollars and seventy-three cents, with interest; and that such payment should be a credit on note of Brenizer for one thousand eight hundred and seventy-five dollars, and the balance to be paid out of the proceeds of the business of the company due to Brenizer, after paying expenses. It should also be stated that the defense of want of consideration for the note in suit is founded upon a claim by Adams that it was a mere accommodation to Brenizer, without any money or property being delivered to Adams therefor; but that it was to enable Brenizer to obtain possession of some stock or assets of another corporation. If the testimony of Adams in reference to the want of consideration for the note is true, it was a complete defense to the action. A great volume of testimony was taken as to the business relations between Adams and Brenizer. This evidence cannot be set out here in a way to be understood by the general reader without unnecessarily extending the opinion.

It appears that, when Brenizer bought his stock in the corporation, he was the owner of one-third of the stock, and Adams owned two-thirds. They undertook to introduce and sell the smoke consumer. As we

understand the evidence, their manner of proceeding was to use the device for consuming smoke only for the purpose of selling territory to others, and thus to dispose of the patent. It was not a patent right which sold on its own merits to the trade generally. The parties traveled the country from Denver to Boston. They sold territory, and took notes for large amounts, upon which but a small part was collected. Brenizer formed a new corporation in Boston, called the New Draft Combustion Company. That corporation had no capital stock excepting the patent of the Tinkham Smoke Consumer Company. Afterwards Brenizer went to Chicago and became the owner of fifteen thousand dollars of stock in a corporation called the Butman Furnace Company. He negotiated with Adams to sell him eleven thousand five hundred dollars of stock in that company. During these negotiations Adams executed the note in suit.

·The books of account of the Tinkham Smoke Consumer Company were introduced in evidence. They were referred to by the witnesses for each party. The plaintiff objected to the introduction of that part of the books which showed the financial condition of the company in July and in the fall of 1890. The objection was overruled. It is contended in behalf of the plaintiff that this ruling was error, because the evidence objected to did not tend to prove any issue in the case. We have stated the course of business of Adams and Brenizer in a general way, for the purpose of saying that, as both parties used the books of the corporation as evidence, all of the contents of the books which in any manner explained or tended to enlighten the jury on the motives and purposes of the parties, and their relations to each other in carrying on these corporations, none of which were founded upon any substantial basis, were properly submitted to the jury.

II.   The plaintiff excepted to the tenth paragraph of the charge to the jury, in which the jury were directed that the present condition of the corporation might be considered by them so far as the same might have a bearing upon the agreement and transactions of the defendant and Brenizer, relating to the promissory notes in controversy.. We do not think the assignment of error attacking this instruction was well taken, in view of the course of business pursued by these parties.

III.   The eleventh paragraph of the instructions to the jury is as follows: "(11) Certain witnesses have testified before you as to their opinion respecting the genuineness of the alleged signature of the defendant to one of the papers introduced in evidence in the case, and it will be proper for the jury to carefully consider the testimony of the said witnesses, and to give it such weight and value as it is justly entitled to, taking into account the experience and knowledge of the witnesses about the matter concerning which their opinion has been given.   But it is proper here to observe that evidence of this character being in fact the result only of a comparison of the controverted signature with the genuine signature of the defendant, as the same is remembered and impressed upon the mind of the witness whose opinion is so given, or with the other signatures proven to be those of the defendant, it is regarded by the law as unsatisfactory, and such as ought not to overthrow the positive and direct testimony of a credible witness who testifies from personal knowledge." This instruction is assailed by counsel for appellant, not so much as being abstractly erroneous as that it leaves out of consideration the fact that Brenizer testified as a witness that Adams signed the paper.   That fact was in no manner withdrawn from the consideration of the jury.   Brenizer

testified as a witness, without objection, that it was Adams' signature. All of the law upon any one question is not required to be given in any one paragraph of the charge. It is further claimed that the experts who testified that the signature in question was that of Adams, were not experts who testified by comparison merely, but they were familiar with his signature. As we understand the instruction, it is not limited to witnesses who testify by mere comparison. It recognizes the fact that the witnesses considered the contested signature of the defendant with "his genuine signature, as the same is remembered and impressed upon the mind." This is the mental operation required of an expert who testifies from his knowledge of the handwriting in dispute, and not from mere comparison. The instruction was not erroneous. It is in substantial accord with an instruction approved by this court, under substantially the same state of facts, in *Bruner v. Wade*, 84 Iowa, 698 (51 N. W. Rep. 251).

IV. Lastly, it is contended that the verdict of the jury is contrary to the evidence. We do not concur in this claim. Taking all of the facts disclosed in evidence, it presented such a case as authorized a verdict for either party. The judgment of the district court is AFFIRMED.