TEXARKANA GAS & ELECTRIC COMPANY ET AL. V. MRS. BELLE LANIER ET AL.

Decided February 10, and March 17, 1910.

**1.—Impeachment of Witness—Contradictory Statements.**

In order to impeach a witness by proof of previous statements contradicting his testimony, they must be called to his attention, so as to afford him opportunity for explanation, and other proof of such previous statements is not receivable where he admits having made them.

**2.—Discovered Peril—Charge.**

A charge of negligence after discovery of another's peril criticised as assuming the fact that the person charged with negligence realized the other's peril.

**3.—Same—Charge.**

Where no charge limiting certain evidence to purposes of impeachment was necessary, an instruction that it could be considered for that purpose was on the weight of evidence, and was erroneous.

ON MOTION FOR REHEARING.

**4.—Same.**

Where evidence of a previous statement by a witness was admitted against him because he was a party, a charge that the jury could consider the same as affecting his credibility was erroneous as to him, being an invasion of the province of the jury.

**5.—Same.**

Where the testimony given by a defendant on a coroner's inquest was more favorable to defendants than that given on the trial, its admission could not be considered prejudicial to his codefendant unless limited by a charge restricting its effect against the latter to purposes of impeachment, and no such charge was called for in his interest.

**6.—Evidence—Impeachment.**

Where a witness was questioned in detail on cross examination as to all the statements made in his former testimony, and admitted them all, with explanations that in some he was mistaken, the written testimony is not then admissible. His previous statements can be proved for impeachment only when he denied making them, or when, he admitting generally that the testimony was given, the writing was necessary to show what he so admitted having sworn.

**7.—Charge—Weight of Evidence.**

Trial courts have no right to refer in their charges to the testimony of any particular witness or to testimony to any fact or group of facts unless this becomes essential to the protection of some right of one or more of the parties.

**8.—Same.**

Where a judgment is supported by only a slender margin of evidence slight deviation from the rule prohibiting charges on the weight of evidence may be cause for reversal.

Appeal from the District Court of Bowie County. Tried below before Hon. P. A. Turner.

*Glass, Estes, King & Burford,* for appellants.—Where a witness has made certain statements at a certain time and place and testifies and admits that he did make such statements at such time and place, it is error to prove by other witnesses that he did make said statements. Rodriguez v. State, 23 Texas Crim. App., 503; Wyatt v. State, 38 Texas Crim. App., 256.

Maddox, the motorman, in addition to seeing Lanier on the track and realizing his danger, must have realized that the said Lanier would not or could not extricate himself from the danger. San Antonio Traction Co. v. Kelleher, 48 Texas Civ. App., 421; Missouri, K. & T. Ry. Co. v. Light, 54 Texas Civ. App., 481; San Antonio & A. P. Ry. Co. v. McMillin, 100 Texas, 562; Galveston, H. & S. A. Ry. Co. v. Wirtz, 55 Texas Civ. App., 555; Pillow v. Texarkana & Ft. Smith Ry. Co., 55 Texas Civ. App., 597.

*Smelser & Vaughan* and *P. G. Henry,* for appellees.—Declarations of a party to the suit are admissible against him without laying a predicate to impeach him, in fact, even though he may never testify. Wells v. Fairbanks, 5 Texas, 584; Edwards v. Osman, 84 Texas, 659; Sterling v. De Laune, 47 Texas Civ. App., 470; Morgan v. Tims, 44 Texas Civ. App., 308; McKay v. Elder, 92 S. W., 268; Contreras v. San Antonio Traction Co., 83 S. W., 870.

While the inquest testimony of Maddox was clearly admissible, it could not legally be considered, except in passing on his credibility. Weir v. McGee, 25 Texas Supp., 20; Halsell v. Decatur Cotton Oil Co., 36 S. W., 848; Spiars v. Dallas Cotton Mills, 32 S. W., 777; Bekkeland v. Lyons, 96 Texas, 225; Henson v. King, 47 N. C., 385; Black v. Marsh, 67 N. E., 201; Sprague v. Bond, 113 N. C., 551; Sprague v. Bond, 18 S. E., 701; Burton v. Wilmington Ry. Co., 84 N. C., 192; Georgia Home Ins. Co. v. Kelley, 113 S. W., 882; Owensboro City St. Ry. Co. v. Allen, 108 S. W., 357; Missouri, K. & T. Ry. Co. v. Cherry, 44 Texas Civ. App., 232.

The charge was not upon the weight of the testimony, nor subject to any of the objections urged against it by appellants. Flannigan v. State, 53 S. W., 113; Dobbs v. State, 113 S. W., 922; Lacoste v. Bexar County, 28 Texas, 422; Collins v. State, 5 S. W., 848; International & G. N. R. Co. v. Stewart, 57 Texas, 170; Jones v. State, 13 Texas, 175; Jacobs v. Totty, 76 Texas, 437; Costley v. Galveston City Ry. Co., 70 Texas, 113; Gulf, C. & S. F. Ry. Co. v. Pettis, 69 Texas, 692; Wright v. Thompson, 14 Texas, 563; Cox v. Shropshire, 25 Texas, 125; Melendy v. Town of Bradford, 56 Vt., 148; Rankin v. Thomas, 50 N. C., 435; Bank of Huntington v. Napier, 23 S. E., 800; St. Louis S. W. Ry. Co. v. Ford, 56 Texas Civ. App., 521; Jones v. Thurmond, 5 Texas, 328.

Submitting the issue of whether or not the engineer "discovered the peril of the trespasser" would be sufficient, and would submit the issue whether or not the engineer realized that the trespasser probably would not get off the track. Texas & P. Ry. Co. v. Roberts,

91 Texas, 535; Houston & T. C. Ry. Co. v. Harvin, 54 S. W., 631; St. Louis S. W. Ry. Co. v. Cockrill, 111 S. W., 1092; Galveston, H. & S. A. Ry. Co. v. Murray, 99 S. W., 151; International & G. N. R. Co. v. Sein, 11 Texas Civ. App., 386; International & G. N. R. Co. v. Tabor, 12 Texas Civ. App., 283; Galveston, H. & S. A. Ry. Co. v. Zantzinger, 49 S. W., 678; Houston & T. C. Ry. Co. v. Finn, 107 S. W., 94; International & G. N. R. Co. v. Munn, 46 Texas Civ. App., 276.

HODGES, ASSOCIATE JUSTICE.—The appellees are the surviving widow and children of Charles Lanier, who was killed in a collision with a street car in the city of Texarkana on April 24, 1907. The appellants are the company that owned and operated the street car line at the time, and the motorman who was in charge of the car that ran over and killed deceased. The suit is to recover damages for the death of Lanier. A trial in the court below resulted in a verdict against the appellants for $10,000.

The testimony showed that Lanier was struck and killed at a point where Fourth Street, the one occupied by the car line, was intersected by Congress Street. Fourth Street runs east and west, and Congress Street north and south. The car was going east, and Lanier approached from the south. Two vehicles going in opposite directions met just east of the east line of Congress Street, so that the rear of the one going east was about on a line with that side of Congress Street. The drivers of the vehicles stopped them at that point for the purpose of permitting the street car, which they saw approaching, to pass, the space between the sidewalk and the car line being too narrow to permit passage without one or the other going upon the car line. The animal hitched to the vehicle going west, meeting the car, appears to have attracted some attention on account of his indisposition to stand still. The distance from the south side of Fourth Street, including the sidewalk, to the south rail of the car line was about twenty-seven feet, the space occupied by the sidewalk at that place being unusually wide and upon an elevated portion of the ground. There was nothing in this space between the south side of Fourth Street and the car to obstruct Lanier's view of the car, or the motorman's view of him while in that space. It seems that as Lanier approached the track he was looking at the restless horse, and did not notice the car. The witnesses differ as to the distance he was from the car when he stepped on the track; one of them testified that the car was six or eight feet away; others say the distance was shorter. The motorman testified that he was running the car at about five or six miles per hour; that he rang his bell when about 100 or 150 feet west of the junction of the two streets, the point where Lanier was killed; that he did not ring it again because his attention had been attracted to one of the horses above referred to, which appeared to be restless, and he thought it probable that it might be frightened by the noise of the bell. He also says he did not see Lanier till the latter stepped upon the track about five or six feet in front of the car; that he then did not ring the bell because he did not have time, but did

everything in his power to stop the car and avoid the collision. The car was at the time going down a slight grade, and was stopped within about thirty-five or forty feet after Lanier was struck. Mrs. Lanier testified that her husband's hearing was defective, and that she had previously cautioned him about crossing the street car line.

The only grounds of negligence submitted by the court were those based upon discovered peril. There was testimony tending to show that, considering the rate of speed at which the car was traveling, it could have been stopped within the distance intervening between it and Lanier after he got on the track, or its speed so checked that injury might have been avoided. The testimony also justifies the conclusion that the motorman could and probably did see Lanier before he got upon the track and while he was approaching it, it being reasonably evident that Lanier must have passed directly between the motorman and the vehicle which he asserts he was observing.

In view of the fact that this judgment must be reversed upon other grounds, it will not be necessary to discuss the assignments questioning the sufficiency of the evidence, or that complaining of the verdict as being excessive.

At the inquest held over the body of Lanier, Maddox, the motorman, made the following statement, which was reduced to writing and signed by him:

"E. C. Maddox, being duly sworn by me, testified as follows: At about 6:12 p. m. on the 24th day of April, 1907, car No. 1, owned and operated by the Texarkana Gas & Electric Company, and which car was in my charge as motorman, ran over Thomas G. Lanier and drug him about a car length. The point at which the car ran over him was at the corner of Congress Avenue and 4th Street, in Texarkana, Bowie County, Texas. I was running the car at a speed of from seven to eight miles an hour and was running at this speed, which is about four miles per hour under the usual speed, because I noticed a buggy going east and a buggy going west and they met right at the crossing and a man stepped right out from behind the buggies and attempted to cross in front of the car and I was in three or four feet of him before I saw him and was unable to control the car in time to keep from running over him in that distance, and I used every effort in my power to prevent the accident. He was going north when the car struck him, he was in the middle of the track and ran directly over him. My car had a fender on it, but apparently did no good, for the reason that at the place where he was run over the dirt between the rails had been washed out and when he was knocked down the fender was then for this reason too high to lift him off the track and failed to afford any protection whatever.

"Have had about one year's experience in running electric cars and our particular instructions are to keep a good lookout in front. My experience is that a car running from seven to eight miles an hour can not be stopped under thirty-five feet and in this distance, as the brakes were partly set, I rang the bell and reversed the car and

threw the brakes fully on, which was all that I could have possibly done.

"He was not killed outright, but was taken up by the barnman, who lives at College Hill, in Texarkana, Ark., and carried to the sidewalk. I came in after the ambulance and he was carried to his home. Dr. Beck was called and attended upon the injured man from the track to the house. I was told that Mr. Lanier died about an hour after he was run over by the car.

"(Signed)                    E. C. Maddox."

On the trial in the District Court Maddox was subjected to a rigorous cross-examination regarding his statements made at the inquest, and his attention was called to the discrepancies between those statements and his testimony given upon the trial. It appears from the record that there had been a previous trial in the court below, in which Maddox's testimony was taken down by the court stenographer; and upon the trial from which this appeal is prosecuted the stenographer's report was used, Maddox not appearing in person. The variance between Maddox's testimony at the inquest and that given upon the trial appears to be mainly as to the rate of speed at which the car was traveling and the ringing of the bell. The witness admitted making the statements at the inquest, and gave his own explanation of the variance, saying that he was in error when testifying on that occasion. After the defendants in the court below had concluded their testimony, the appellees offered in evidence the written statement containing Maddox's testimony at the inquest. This was admitted over the objection of the appellant, Texarkana Gas & Electric Company. The action of the court in admitting this testimony is assigned as error. In this connection complaint is also made of the following portion of the court's charge: "Plaintiffs in this case read in evidence the written evidence of E. C. Maddox taken at the inquest trial held by the justice of the peace over the body of said Lanier. This is original evidence as against the defendant, Maddox, and may be so considered by you. But this evidence is not original evidence as to the defendant company, and can't be so considered by you. But if you believe that said evidence of Maddox differs from his evidence as given by him on this trial, and contradicts or tends to contradict his evidence, then I charge you that you may consider such evidence of said Maddox at the inquest in passing on his credibility as a witness in this case and weighing his evidence, but you can consider it for no other purpose as to the defendant company." In offering this testimony the appellees did not specify the purpose for which it was intended. The charge of the court would seem to indicate that it was offered both as substantive evidence against Maddox, one of the parties to the suit, and also for the purpose of impeaching him as a witness. We fail to see how its introduction would tend to establish any ground of negligence relied upon for a recovery not fully and completely covered by other testimony about which there was no dispute. Upon the issue of discovered peril it seems to us that it weakens rather than strengthens the plaintiffs' cause, in that

it shows a greater rate of speed in the car, and necessarily a greater difficulty in avoiding the collision after discovering the peril of the deceased. It also shows that the bell was sounded, whereas one of the grounds of negligence relied upon was the failure to perform that duty. These facts, however, would not affect its admissibility as substantive evidence, but only its probative value. We may therefore concede that as to Maddox it was admissible as substantive evidence of some material fact relied upon for recovery. But we do not think under the circumstances it was admissible for the purpose of impeaching him as a witness. Upon his cross-examination Maddox had his attention called to all of the material portions of his statements made at the inquest, and in every instance he admitted making them. Having done this, there was no occasion to then offer in evidence the written statement for the purpose of showing these variant statements. If there was anything contained in the writing which had not been called to his attention and which might affect his credibility as a witness, that fact furnished an additional reason why the writing should not have been admitted. In view of the fact that Maddox was not present upon the trial, neither he nor his codefendant had any opportunity to explain the other discrepancies which had not been primarily called to his attention. The rule seems to be well settled that where it is sought to impeach a witness by showing that he had made statements upon another occasion at variance with his testimony given upon the trial, he should have some opportunity of explaining the discrepancies. If the matter has not been called to his attention and a predicate laid for impeachment, certainly he could not be denied the opportunity to be subsequently called to the stand and make such explanations as he may be able to give. Weir v. McGee, 25 Texas Supp., 32. It is the general rule that in order to impeach a witness by showing that he has made statements at another time different from those made upon the trial, a predicate must first be laid by calling his attention to the former statements. If when this is done he admits having made them, the party attacking him has then no occasion to offer in evidence the testimony by which it expects to prove the inconsistent statements. International & G. N. Ry. Co. v. Boykin, 99 Texas, 259, 89 S. W., 639; 7 Ency. Ev., 96, and cases cited. In our opinion the cross-examination brought out all of the material points embodied in the testimony given at the inquest by Maddox, and we are inclined to regard the action of the court in admitting the writing itself as practically harmless, and insufficient alone to justify a reversal. The court, however, told the jury they might consider this instrument in passing upon the credibility of Maddox. If the instrument was not admissible for that purpose, then it is clear that the jury should not have been permitted to so consider it. But assuming that the testimony was admissible both as substantive evidence against Maddox and for the purpose of his impeachment as a witness, we think the court should not have given this charge. The rule which makes it permissible and proper for the court to limit testimony admitted before the jury is usually confined to those instances where the admitted testimony may be used

by the jury for an illegitimate purpose, and such limitation is intended as a protection to some right belonging to the opposing party. If this writing contained any statements which the jury might construe as contradicting the defense relied on by the appellant, Texarkana Gas & Electric Company, that defendant would have had the right to an instruction limiting the evidence ·to the particular purpose of impeachment, if it were properly admissible for that purpose; but where the evidence had no such effect and could not have prejudiced that appellant's defense, a charge calling the attention of the jury to the fact that they might consider it in passing upon the credibility of the witness was just as much on the weight of the evidence as if the court had made a similar reference to any other portion of testimony introduced for impeaching purposes and which could have had no such ulterior effect. Under the issues submitted upon which a recovery could be had the testimony of Maddox was of vital importance to the appellants, and any unauthorized action by the court which even in a slight degree may have affected the consideration which the jury might give in weighing his testimony may have determined the question of liability. While it may be true that the jury had the right to consider this evidence in passing upon the credibility of Maddox, the wrong consisted in telling them so when the occasion had not arisen that called for such an instruction.

The fourth and fifth assignments of error object to certain portions of the court's charge as being upon the weight of the evidence in assuming that Maddox, the motorman, realized the danger of Lanier before he was struck and while approaching the track, and also while on the track in front of the car. We think the charge subject to the criticisms urged. This objection should be avoided upon another trial.

The remaining assignments do not require discussion, and are overruled. But for the errors pointed out the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

The appellees have filed a lengthy motion for a rehearing, in which counsel have ably and exhaustively discussed the grounds upon which the reversal of the judgment of the court below was placed. We have again given those questions a careful consideration, and are unable to discover any good reason or judicial authority for reversing our former holding. It may be that in stating the views of the court the writer did not make them as clear as he should have done, and that this has to some extent detracted from the weight of the reasons governing the court's conclusions.

As before stated, we think the written testimony of Maddox given at the inquest was not, under the circumstances attending this trial, admissible. Still, its admission alone might not justify a reversal of the judgment. The discussion of this question in the appellees' argument proceeds upon the assumption that the written instrument

was not only properly admissible, but that its evidentiary nature was such as entailed upon the court the duty to limit its effects in the manner he did. This last contention is based upon the hypothesis that Maddox's testimony at the inquest, if not limited to impeaching purposes as to the appellant company, would operate to its prejudice in the minds of the jury. Maddox was a party to the suit as well as a witness in the case. Therefore any statements which he made previous to the trial, whether in harmony, or in conflict, with his testimony, and which tended to establish any of the material facts upon which the appellees relied for a recovery, were admissible against him as substantive evidence. If offered for that purpose the writing was before the jury to be considered by them generally as to his liability at least, just as they would consider any other substantive evidence offered. If the testimony was favorable to Maddox, or more so than that he gave upon the trial, he had the right to the benefit that might result from its consideration in that light. The fact that it was his own declaration made at another time, and from the standpoint of substantive evidence, hearsay or self-serving, did not affect his right to have it considered generally without any restrictions. Davidson v. Wallingford, 88 Texas, 619, 32 S. W., 1030. Notwithstanding this inquest testimony is offered by the appellees without any restrictions as to the purposes for which they desired it considered by the jury, and its admission over all the objections made by the appellant company, the court told the jury, "This is original evidence *against* the defendant Maddox, and may be so considered by you." Then follows a charge restricting their consideration of it as against the appellant company solely to passing upon the credibility of Maddox as a witness. The portion of the charge quoted unequivocally told the jury, in effect, that the facts stated in the written instrument tended to disprove the defense interposed by Maddox, and was in that respect a charge upon the weight of the evidence, of which Maddox now has a right to complain. Without reference to any other feature of the case, this error alone would, we think, require a reversal of the judgment as to Maddox. But the court did not stop here. He continued: "But if you believe that said evidence of Maddox differs from his evidence as given by him on this trial, and contradicts or tends to contradict his evidence, then I charge you that you may consider such evidence of said Maddox at the inquest in passing on his credibility as a witness in this case and *weighing his evidence* (italics ours), but you may consider it for no other purpose as to the defendant company." Maddox, the party defendant, had the same right to complain of an illegal assault upon the credibility of Maddox the witness as did his codefendant. Maddox the party, when a witness, could be assailed only through those legal avenues marked out for attacking the credibility of witnesses in general. Browning v. Gosnell, 91 Iowa, 448, 59 N. W., 340. His partisan connection with the litigation in no way deprived him of that guaranteed protection. He therefore occupies in this appeal a position of equal advantage with his codefendant in complaining of the latter portion of the charge quoted above. Considering that the inquest testimony of Maddox was ad-

missible as substantive evidence as to him, was it also admissible for the purpose of impeaching him as a witness? Not unless it was essential in getting before the jury some material fact, not otherwise presented to them, which would tend to show that Maddox was swearing falsely upon the trial. If Maddox at the inquest made statements as to how this accident occurred so materially at variance with what he testified to on the trial as would probably detract from his credibility, the appellees were clearly entitled to have those variant statements considered along with his subsequent testimony. The inquest testimony having been reduced to writing and signed by the witness, a sufficient predicate might have been laid for its introduction by merely showing the writing to the witness and eliciting from him an admission that he had made the statements therein contained, or a denial in whole or in part. If the witness admitted the correctness of the written instrument as an account of his previous testimony, the document might have been offered and admitted in evidence without any further questioning upon that subject. But counsel for appellees elected to adopt a different method of acquainting the jury with the fact that Maddox had given a different account of this occurrence when testifying at the inquest. On cross-examination Maddox was asked in detail as to all the material variances between his testimony in chief on the trial and his statements made at the inquest. In every instance he so unequivocally admitted the variant statements and their inconsistency that there was no occasion, in order to get those facts before the jury, for resorting to the introduction of the instrument itself. The material points of variance consisted of his statements as to the rate of speed at which the car was moving, the distance the deceased was from the car when first discovered by Maddox, and the time when the gong was sounded. At the inquest Maddox stated that his car was going seven or eight miles per hour, which was about four miles under the usual speed; that he did not see the deceased till the latter stepped on the track about three or four feet in front of him; that he then rang the bell and did everything he could to stop the car. On the trial he testified that his car was going at the rate of about five or six miles per hour; that the deceased was five or six feet in front of the car when he was discovered; that witness then did not ring the bell because he did not have time, but reversed his car and did all he could to stop it. In that connection he stated on the trial that he rang the bell about 150 feet before getting to the crossing where the collision occurred, and did not again ring it before the accident happened. The court submitted the case to the jury upon the issue of discovered peril alone, assuming, we suppose, that the deceased was guilty of contributory negligence as a matter of law. Looking at the two accounts of the killing of deceased as affecting the liability upon the issue of discovered peril, we think the testimony of Maddox on the trial was an account much less favorable to him and his codefendant than the testimony he gave at the inquest. The conflict, therefore, so far from necessarily discrediting the veracity of the witness, might tend to show a conscientious effort at the time of the trial to tell the exact truth, notwithstanding

its more damaging consequences. The language of the court in telling the jury that they might consider the conflict, if any there was, in passing upon the credibility of Maddox, when taken in connection with the preceding portion of the charge, we think, contained an intimation to the jury that in the mind of the court this conflict would operate to impair the credit of Maddox as a witness. The variant statements having been offered by the opposing party in the presence of the jury and over the objection of one of the appellants, would logically be expected to have that effect, and such a construction would likely be given the charge.

But passing to the consideration of the objection to the court's charge from another standpoint, and the one discussed to some extent in the original opinion, we think the appellants were prejudiced by the effort to limit the consideration which the jury might give to this inquest testimony. As a general rule, trial courts have no right to refer in their charges to the testimony of any particular witness, or to the testimony as to any isolated fact, or group of facts, unless this becomes essential to the protection of some right of one or more of the parties to the suit. Violations of this rule are usually condemned as charges upon the weight of the evidence. The necessity for the rule is founded upon the fact that the testimony which is limited to a particular purpose is legally incompetent for any other, but in the minds of uninformed jurors may tend to establish other and material issues, to the detriment of the opposite party. The most common application of the rule occurs in cases where testimony incompetent for any other purpose is offered for the impeachment of a witness. There is another rule equally as important and as universally enforced as the one above mentioned, and that is that variant statements can not be used for purposes of impeachment unless they refer to material issues involved in the case on trial. While the mere fact that a witness has made conflicting statements on different occasions might ordinarily impair his credibility, it would not be permissible to attack his credit by merely showing that he made a conflicting statement, without reference to its materiality. If the conflicting evidence admissible for impeaching purposes must be material to the issues in controversy, then it logically follows that it might tend to prove some material issue for which it could not be legally employed. Thus it will be seen that the exception which permits a departure from the general rule, regarding references to the evidence in the charge of the court, is founded upon an essential duty—that of protecting the opposite party from the illegitimate consequences of testimony otherwise material and relevant. Clearly, then, where the conditions calling for the exception are absent the general rule should be observed, and the jury permitted to exercise its own judgment in considering the testimony. The authority to specifically refer to and direct the use to be made of particular evidence is the product of, and is commensurate only with, the right of the opposite party to this protection against its practical, but illegitimate, tendencies. Neither of the appellants sought to have this testimony so limited, and without any request upon their

part the court was not required to do so, had it been a case where it was proper.

Counsel for appellees insist with much earnestness that the effect of this inquest evidence was damaging to the defense urged by the appellants. We do not agree to this contention. There was not a fact in it which in any way affected the defense that was not established beyond dispute by the witnesses for the defendants before this instrument was offered. As before stated, so far from operating to the prejudice of the defendants, we think it tended to strengthen their defense upon the very question in issue. They had nothing to lose, but everything to gain, by having the jury consider it generally for all purposes. On the contrary, they had everything to lose and nothing to gain by having its consideration restricted to impeaching purposes. The importance of Maddox as a witness in this case was such that the jury could not have returned the verdict it did without disregarding his testimony in every essential respect. In view of the slender margin of evidence upon which this judgment can be supported, we think only a slight deviation from the rule prohibiting a charge upon the weight of the evidence sufficient to justify, if not to require, a reversal. It might be that upon other issues which the court did not submit a stronger case upon the facts might have been presented, but that question is not before us.

It is unnecessary to discuss the other question upon which the reversal of the judgment was based. Speaking for himself alone, the writer is frank to admit that reversing judgments upon the grounds last referred to in the original opinion is justified more upon precedents established by the courts of last resort than upon any sound principle. The motion is overruled.