THOS. HICKEY, Appellant, v. WEBSTER CO., IOWA, and THE
BOARD OF SUPERVISORS, Appellees.

Appeal: REVIEW OF QUESTIONS NOT URGED BELOW.  Where a party proceeds to trial on the merits without objection, after the cause has been reinstated and the trial ordered, the successful party can not urge on appeal that the court had no jurisdiction because there was nothing before it for trial.

**Same:** NOTICE: SUFFICIENCY. A notice of appeal addressed to and served upon the attorneys appearing for all defendants and appellees in the trial court is sufficient.

**Evidence:** INSTRUCTION: INVASION OF PROVINCE OF JURY. Where the witnesses for one party, on the question of the comparative value of land immediately before and immediately after the establishment of a drainage ditch, based their evidence upon personal knowledge of the land, and the witnesses for the adverse party having no personal knowledge testified in response to hypothetical questions, an instruction that the jury might consider the personal knowledge of the witnesses or their lack of personal knowledge of the land, and give to the testimony of each class of witnesses the weight it is entitled to, did not direct them to attach greater weight to one class of evidence than the other, and did not invade the province of the jury.

**New trial:** READING OF INSTRUCTIONS: MISCONDUCT. The act of the trial court in reading his instructions which were favorable to the defeated party in a lower tone of voice was not prejudicial error. And where, as in this case, the affidavit in support of the alleged error was contradicted the appellate court will indulge the presumption existing in favor of the ruling of the trial court.

**Evidence:** WEIGHT: DETERMINATION BY JURY. In determining the value of land upon conflicting evidence consisting largely of matters of opinion, the jury may adopt a middle ground and fix their verdict accordingly.

*Appeal from Webster District Court.*—Hon. Robt. M. Wright, Judge.

Wednesday, September 21, 1910.

Appeal from an award of damages in a drainage proceeding. *Affirmed.*

*Chantland & Hadley* for appellant.

*Mitchell & Hackler,* and *Kelleher & O'Connor,* for appellees.

Evans, J.— In January, 1905, the board of super-

visors of Webster County established a drainage district, and ordered the construction of an open drainage ditch therein. This drainage district included plaintiff's farm of one hundred and sixty acres, and the proposed ditch was laid diagonally through such farm. The plaintiff duly filed with the board a claim for damages. This claim was refused *in toto* and the order of establishment was made without allowing any damages to the plaintiff. From the order disallowing damages the plaintiff appealed to the district court in March, 1905. The appeal was pending in such court until August 17, 1907, when a stipulation of settlement was entered into between plaintiff's attorney on the one hand, and the county attorney on the other, who had appeared in the case for the county and the board of supervisors. In February, 1908, certain property owners in the district appeared in the case and filed a petition asking to have the stipulation of settlement set aside. After hearing of this petition, the court sustained the same and ordered the settlement set aside, and ordered the appeal to be heard upon its merits. From this order no appeal was taken by either party. We have no occasion, therefore, to consider any question arising upon the record preceding such order of the court, although considerable of the record is devoted to that part of the proceedings.

1. It is urged by appellees that, after the submission of the petition to set aside the settlement, the plaintiff dismissed his appeal, and that there was nothing left for trial before the district court, and that therefore no jurisdiction could be acquired by this court. We infer that this alleged dismissal was made in pursuance of the settlement which had been entered into. Be this as it may the order of the court reinstated the case, and ordered a trial and the parties proceeded to trial on the merits without objection on the ground

1. APPEAL: review of questions not urged below.

now urged, and we do not think that the appellees are in any position to raise the question at the present time.

It is also urged by appellees that appellant failed to serve a notice of appeal upon the petitioners who became parties to the proceeding in the district court, and that the appeal should therefore be dismissed. It appears, however, from the notice of appeal that it was addressed to and served upon the attorneys who appeared for all the defendants and appellees in the court below, and this was sufficient under the statute. We proceed, therefore, to a consideration of the appeal on its merits.

2. SAME:
notice:
sufficiency.

II. The controversy in the court below turned wholly upon one question of fact, viz., what was the comparative value of the plaintiff's farm immediately before and immediately after the establishment of the ditch theron, exclusive of benefits? The ditch was actually constructed in 1905, whereas the trial in the district court was not had until January, 1909, more than three years later. The testimony of the witnesses as to the value of the land immediately before the construction of the ditch necessarily related to a past time. The plaintiff was a witness in his own behalf, and, as such, he described the general condition and quality of his land as it was immediately before the construction of the ditch. He did not, however, testify to the value either before or after. He thereupon produced several witnesses who were not personally acquainted with the condition and quality of the land before the construction of the ditch, but who testified to its value hypothetically, basing their hypothetical evidence upon an assumed condition and quality of the land as testified to by the plaintiff himself. With possibly one exception, none of plaintiff's witnesses testified from personal knowledge as to the value of the land before the construction of the

3. EVIDENCE:
instruction:
invasion of
province of
jury.

ditch. Based upon hypothetical questions, these witnesses generally testified to the value of plaintiff's land as being $20 an acre more before the construction of the ditch than after. Defendant's witnesses as to such value all testified that the acreage value of plaintiff's land was exactly the same before and after the construction of the ditch and based their testimony upon alleged personal acquaintance and knowledge. Some of them had farmed the land for many years and all of them claimed to be familiar with it. Going more into detail, the plaintiff claimed that the land appropriated by the ditch and by its berms and banks was practically all good tillable land; whereas, defendant's witnesses claimed that the land so appropriated was an old water course which was usually impassable and often contained water several feet deep, and that an old ditch had been dug in former years which had afforded partial relief, and that the new ditch appropriated the same land as was occupied by the old ditch. The jury awarded damages to the plaintiff in the sum of $241.80. The plaintiff has appealed from this award as being wholly inadequate. No complaint is made here concerning any ruling of the court in the admission of testimony. Only one instruction is challenged and to that we give our attention.

The heart of such instruction is as follows: "For the purpose of determining the weight to be given to the testimony of the witnesses who have testified to the value of the plaintiff's land you are authorized to take into consideration the personal knowledge of said witnesses of said land or their lack of personal knowledge thereof at the time of, and before the time of, the establishment of the said ditch or drain, and to give to the testimony of both classes of witnesses the weight you deem it to be entitled to." The complaint is that the court made an invidious distinction between the witnesses of the respective parties

and represented them as being in two separate classes. We think the instruction under this record is not amenable to the criticism made. The fact that certain witnesses testified hypothetically, and not from personal knowledge, was a proper matter for the consideration of the jury, and the trial court might well have given the usual instruction on the subject of opinion evidence based upon hypothetical questions. The trial court did not do this, but directed the attention of the jury to the distinction in the nature of the testimony in the manner above indicated. The province of the jury was not thereby invaded. The jury was not directed to attach greater weight to one class of evidence than the other, but it was directed to give consideration to the distinction. If it be true that the practical effect of such caution would be favorable to testimony based upon personal knowledge, it is only because testimony of that nature, other things being equal, appeals to the disinterested mind as being the most credible. It does not, however, necessarily follow that such evidence is more credible in every case; but whether it be so in a given case is always a question to be determined therein by the jury in the light of all the evidence in the case. This rule was in no manner infringed by the instruction complained of. As bearing somewhat upon the question, see *Buford v. McGetchie,* 60 Iowa, 298; *Ayrhart v. Wilhelmy,* 135 Iowa, 290; *Bever v. Spangler,* 93 Iowa, 576; *Whitaker v. Parker,* 42 Iowa, 585; *Indianapolis v. Dunn,* 37 Ind. App. 248 (76 N. E. 269); *Cline v. Lindsey,* 110 Ind. 337 (11 N. E. 441).

III. The appellant complains of the manner in which the trial judge read his instructions to the jury, the general complaint being that such instructions as might be deemed favorable to the defendants were read by the court more impressively and effectively than were such instructions as might be

4. NEW TRIAL: reading of instructions: misconduct.

deemed favorable to the plaintiff. This point was made in the form of a motion for a new trial supported by an affidavit of counsel, a part of which is as follows:

I further on oath depose and say that at the reading of the instructions of the court to the jury, which were read to them immediately at the opening of court on Saturday morning of the trial, I was the only counsel for plaintiff present; that I had laid particular stress in my argument upon the fact that every one of the witnesses for the defendant who testified as to value and damages was in fact a party who owned land in the drainage district, and who would have to help pay any assessment which was recovered by the plaintiff in the case except Mr. Tonhouse, and his wife is a sister of Peter Grall, one of the interested witnesses who testified, so that the matter of interest was considered by plaintiff a strong point against the witnesses for the defense and so urged and argued; that, as a part of the argument, it was suggested that they listen for that part of the instructions of the court relating to the interest of witnesses, and see if I was not stating it correctly, and particularly to take it into consideration in their deliberations; that the trial court was present and listened to all of my argument, and knew the stress I had laid upon the said point; that in reading his instruction No. 9, when the court pronounced the words, 'his interest, if any, in the result of the controversy; his relation to the parties interested or the absence of such relations,' the court perceptibly lowered his tone of voice, thereby in effect discounting all of plaintiff's counsel's argument on that point, and affiant fully believes that such lowering of tone by the court resulted in a very great prejudice to his client the plaintiff in this cause.

This affidavit was controverted by counsel for the other side. It may be proper to suggest here that the burdens of this court will be greatly multiplied, if not magnified, if it must assume the responsibility of controlling the elocutionary taste and judgment of the trial courts. With some persons words seem more impressive when spoken in a loud tone of voice, and climaxes are

attained only in a high pitch; with others, the high tone
loses its power and becomes wearisome, and the lower
tones are welcomed as more restful and persuasive. Only
the art of the orator, under the inspiration of the moment,
can always determine the most effective modulation,
whether high or low. If, therefore, it appeared as a fact
in this record that the trial judge did at any stage in
the reading of his instructions "perceptibly lower his tone
of voice," it must be manifest to counsel upon further
reflection that we would be quite helpless to determine
from such fact whether appellant was hurt or helped by
such modulations. Further, the affidavit itself is contro-
verted, and a presumption must be indulged in favor of
the ruling of the trial court. From either point of view
we think the complaint is without merit, and that the
criticism involved in it is not justified.

IV. Lastly, it is argued that the testimony on behalf
of the defendants is so contradictory and unreasonable
that it should be disregarded, and that the trial court
ought to have accepted the testimony of
plaintiff's witnesses and entered an award,
notwithstanding the verdict for $3,200 in
accord with such testimony. The appellant has not suffi-
cient ground on which to stand in this contention. See
*Reuber v. Negles,* — Iowa, —. The controversy turned
wholly upon a question of fact, and the evidence consisted
almost wholly of matters of opinion. The jury had a right
to adopt middle ground in its verdict. The verdict could
well have been larger, but approximation was the best
that could be done in any event. We are not favorably
impressed with the candor of the witnesses on either side
in the formation of their expressed opinions. On the one
hand damages were greatly magnified and on the other they
were minimized to the zero point. The jury seems to have
done the best it could with the testimony before it. If
the plaintiff could have produced in evidence more moderate

5. EVIDENCE:
weight:
determination
by jury.

estimates, he could have laid the foundation for a better verdict.

On the record before us he appears to have had a fair trial, and the judgment below must therefore be *affirmed.*