A. J. AYRHART, RECEIVER OF THE DEDHAM SAVINGS BANK, Appellant, v. H. WILHELMY, Appellee.

Signature: GENUINENESS: HOW DETERMINED. Where the defendant positively denies his signature to an instrument, and the only attestation to its genuineness is the testimony of a witness speaking from general acquaintance with defendant's handwriting, or as experts from comparison of the signature with others which are admitted, the issue is for the jury.

Genuineness of signature: EVIDENCE. On an issue as to the genuineness of defendant's signature to a note in suit, which

recites that it was given in consideration for the sale of goods, the testimony of a witness that he invoiced the goods and reported to the payee when defendant was present, and then heard no conversation in relation to the note, has a slight tendency to corroborate defendant's denial of the signature and is admissible.

**Expert evidence:** INSTRUCTION. An instruction that expert evidence ought not to overthrow the positive and direct evidence of credible witnesses testifying to personal knowledge, and is most useful in case of conflict between witnesses as corroborating testimony is correct, when applied to a question of the genuineness of a signature.

**New trial:** MISCONDUCT OF JURORS. A casual remark made by a juror during their deliberations derogatory to the character of one of the contesting parties is not such misconduct as to require a new trial, in the absence of a showing that other members of the jury gave heed to the same or that it in any way influenced their verdict.

**Same.** Neither misconduct of court nor jury can be predicated on the fact that during the deliberations of the jury the judge was called to the jury room and questioned by a member of the panel, when the nature of the interrogatories is not disclosed and it appears they were unanswered.

**Same.** The fact that one or more jurors engage in a social game of cards during the recess of the trial, in a public place and at which no reference is made to the trial, will not constitute such misconduct as to require a new trial.

*Appeal from Carroll District Court.*— HON. Z. A. CHURCH, Judge.

WEDNESDAY, JULY 3, 1907.

ACTION on a promissory note. Verdict and judgment for defendant, and plaintiff appeals.— *Affirmed.*

*W. C. Saul* and *C. C. Helmer,* for appellant.

*George W. Bowen,* for appellee.

WEAVER, C. J.— The petition of the plaintiff declares upon a promissory note alleged to have been executed by the

defendant in the following form: " Dedham, Iowa, Feb. 13, 1903. For value received in certain harness goods and sundries, a list of which is hereto attached, amounting in value to $416.16, I promise to pay J. G. Caton the sum of $416.16, at various times as I sell the goods. Payments not to be made in sums less than $5. Payments to be endorsed hereon. H. Wilhelmy." The defendant denies the genuineness of the signature to the instrument, and denies that he ever executed or delivered the same, or authorized its execution or delivery by any other person.

As tried and submitted to the jury, the case was made to turn upon the single question of fact as to the genuineness of the signature to said writing. The defendant as a

1. SIGNATURE: genuineness: how determined.

witness in his own behalf positively and unequivocally denies said signature. No witness undertakes to testify to having seen it written, and the only attestation to its genuineness is by witnesses who speak either from general acquaintance with the defendant's handwriting, or as experts from a comparison of the writing in question with other admitted signatures. That the issue of fact thus presented was one which the court was in duty bound to submit to the jury is too clear for argument, and too well established to call for quotations from the books. *Borland v. Walrath,* 33 Iowa, 133; *Browning v. Gosnell,* 91 Iowa, 457. It follows therefore that the verdict of the jury must be upheld, unless prejudicial error is found in some of the rulings of the trial court of which complaint is made. Such error is assigned by the appellant in the following respects:

One Parr was called as a witness for the defense and permitted to testify that he at one time conducted a business in Dedham for which the payee in this note furnished the

2. GENUINENESS OF SIGNATURE: evidence.

capital. He further stated that he invoiced the stock and reported it to the bank of which Caton was an officer, and that Caton and defendant were present. Witness saw and heard nothing about

the giving of any note by defendant.  The entire testimony of this witness, as abstracted, is so indefinite and fragmentary that it is difficult to understand its connection with the matter in controversy.  There is very little in it which, even if incompetent or immaterial, could have prejudiced either party.  The note having mentioned the sale of a harness stock as the consideration of the promise to pay, inquiry into that alleged transaction was doubtless proper as bearing upon the question whether such a note was or was not given.  Assuming that the transaction of which the witness speaks is the one out of which the note is claimed to have originated (and this seems to be conceded by counsel), his testimony had some slight tendency to corroborate the defendant's denial of the execution of the instrument, and there was no error in its admission.

In its charge to the jury, the trial court said that, while expert evidence was admissible upon the genuineness of the signature, and should be given such weight as the jury found it entitled to, yet testimony of that character

3. EXPERT
   EVIDENCE:
   instruction.

was of a low order of evidence, and " ought not to overthrow the positive and direct evidence of credible witnesses, who testify from their personal knowledge, and is most useful in the case of conflict between witnesses as corroborating testimony."  This instruction is said to be erroneous.  We think otherwise.  It is an instruction which has often been given, and embodies a rule which has often been approved by this court.  The rule as stated in the instruction might not be approved if applied to the testimony of experts speaking as men of science — as, for example, physicians or chemists testifying concerning matters which require special skill, study, preparation, and experience.  See *Ball v. Skinner,* 134 Iowa 298.  But expert testimony as to handwriting is universally recognized as having slight value against the positive and unequivocal testimony of credible witnesses speaking of their personal knowledge.  *Browning v. Gosnell,* 91 Iowa, 448;

*Borland v. Walrath,* 33 Iowa, 130; *Whitaker v. Parker,* 42
Iowa, 585; *Hammond v. Wolf,* 78 Iowa, 227. Such being
the accepted doctrine of the authorities, there is no good rea-
son why the jury should not be so instructed. The appel-
lant's exception to the instruction in question is not well
taken.

A ground of the motion for new trial was alleged mis-
conduct by the jury. This claim is based on the affidavit
of one juror to the effect that, during their deliberations
upon their verdict, some of the jurors told the rest of the
panel of certain forgeries committed by Caton, the payee of
the note in suit; also, that during their deliberations the
presiding judge was called to the jury room, and was asked
several questions by one of the jurors, the nature of which
the affiant was unable to state, and that said judge did not
answer said questions nor instruct the jury in writing as to
the law thereon. Another juror made affidavit that, during
the pendency of the trial, one or more of said jurors engaged
in playing cards with the defendant and others at the hotel.
On the other hand, two of the jurors make affidavit that they
heard no mention of the charges against Caton; that almost
immediately after retiring to the jury room a ballot revealed
the finding of eleven jurors in favor of defendant; and that
at no time did their balloting show less than ten jurors hold-
ing to that conclusion. It is also shown by counter affidavit
that the game of cards referred to was a social game of
" pedro," joined in by six persons, and that at no time was
reference of any kind made to the lawsuit by the defendant
or the juror, or by any other person in the company.

We are of the opinion that no misconduct is shown re-
quiring a reversal of the case. If every bit of gossip or ir-
relevant statement or conversation which finds expression in
a jury room is sufficient to vitiate a verdict,
few, if any, would be permitted to stand
against attack by the unsuccessful party.
True, if extrinsic or irrelevant matter is introduced into the

4. NEW TRIAL:
  misconduct
  of jurors.

deliberations of the jury in such manner as to raise any reasonable question whether it did not influence the verdict, the court may properly interfere and set it aside; but a casual remark or statement made by a juror derogatory to one of the contesting parties ought not to be so regarded, in the absence of any showing that anybody gave heed to the statement, or was in any manner influenced thereby. In this case, but one juror alleges that such statements were made, and, though he says they were made to the " balance of the jury," two of them unite in saying they heard nothing of the kind. The affiant does not attempt to give the name of the juror or jurors thus offending, or, to quote their language, nor does he himself claim to have considered the same, or to have been in any manner influenced thereby.

The statement as to invasion of the jury room by the trial judge is of a very trivial character, and is its own sufficient answer, in that it shows affirmatively that the affiant

5. Same.
does not know the nature of the questions asked the judge, and reveals that, whatever their nature, they were not answered. It is easily conceivable that the juror may have been asking some personal favor or indulgence having no reference whatever to the case under consideration, and certainly no presumption of misconduct by the juror or by the court can be indulged in from the showing thus presented.

Nor is the incident of the card game one of serious import. Good taste and due regard for the proprieties, doubtless, dictate that jurors and parties avoid familiar inter-

6. Same.
course pending the trial and disposition of a case. They should be careful not only to avoid actual impropriety, but to keep themselves clear of the very appearance of evil; but it is inevitable that they should be brought into frequent contact in hotels and other public places, and the fact that they sit at the same table in the dining room, or are drawn into the same group of persons in conversation, or take part with others in the various means

of lawful recreation going on during the hours of recess, ought not to be regarded as reprehensible misconduct, so long as this is publicly and openly done, without any attempt by any one to abuse such opportunity for the purpose of influencing a juror's verdict. *Koester v. Ottumwa,* 34 Iowa, 44. Virtue of such fragile character as to be susceptible to corruption from the exercise of ordinary neighborly sociability is fortunately not so common as to constitute a serious menace to the administration of justice.

We find no reversible error in the record, and the judgment of the district court is *affirmed.*