HAROLD KRIEG, appellee, v. R. E. GRANT, appellant.

No. 49084.

(Reported in 80 N.W.2d 724)

February 5, 1957.

Hart & Hart, of Elkader, for appellant.

C. F. Neylan, of Elkader, for appellee.

Peterson, J.—Plaintiff is a farm laborer. Defendant is a doctor living at Volga in Clayton County. He was owner of a farm of 231.9 acres located 21 miles from Volga. In March 1951 plaintiff made an oral agreement with defendant to work for him on his farm. He was to receive his board and room and

$150 per month as wages. Defendant had the farm rented to a tenant named Elwin Sargent on a 50-50 basis. Plaintiff started his service on April 1, 1951, and worked every day for 11 months 4½ days. During this period he was only paid $255, leaving an unpaid balance of $1416.73. After completing his work on March 5, 1952, he called on defendant in Volga three times to get the balance of his money. He states defendant told him he would pay him every cent as soon as he settled with Sargent, the tenant. Defendant failed to pay and this action resulted. The position of defendant is that he did not hire plaintiff to work for him, but made arrangements with plaintiff to work on the farm for the tenant, Sargent. He testified the arrangement was that Sargent was to pay plaintiff $115 per month and defendant was to pay $35 per month. He claims he paid the first four months at $35 per month and tendered the balance of $35 per month to plaintiff, which he refused to accept. In addition to testimony of plaintiff and defendant the only witnesses in the case were Mr. Sargent, the tenant, called by plaintiff, and Mr. Reimer, a lawyer, called by defendant. Mr. Sargent testified plaintiff had worked regularly throughout the year in the performance of whatever work was necessary on a farm of that size, and in addition thereto had performed considerable work in connection with erection of fence and buildings. He was not present when the oral agreement was made between plaintiff and defendant. He testified he had an arrangement with defendant that defendant was to pay $35 per month, and $115 a month was to be paid out of money from sale of hogs raised on the farm. The case was submitted to the jury under instructions to which no exceptions were taken by either party. The jury returned a verdict in favor of plaintiff in the amount of $1416.73.

Motion for new trial was filed, claiming the court erred on three grounds: 1. Failing to admit certain testimony. 2. Failing to direct a verdict in favor of appellant. 3. Failing to consider alleged misconduct of certain jurors. The trial court overruled the motion for new trial.

I. Concerning the errors alleged, as to admission or nonadmission of testimony, the position of appellant is along two lines. The first concerns admission of evidence as to the arrangement between defendant and his tenant, Sargent. The

trial court took the position throughout the trial that the only issue in the case was plaintiff's action for wages against defendant under the oral agreement. The court consistently held that whatever arrangement defendant had with his tenant was a matter between defendant and the tenant. The court held any evidence concerning such arrangement, method of payment of $255, and details of sale of hogs from the farm, was immaterial as far as plaintiff's case was concerned. All rulings to which appellant objects pertain to this line of demarcation drawn by the trial court throughout the trial. It is not necessary to refer to specific questions and rulings. We hold the position of the court was correct. There is no evidence plaintiff was ever a party to any arrangement among the three parties. He had an agreement with defendant, and any other agreement was between defendant and his tenant.

The other error assigned by appellant with reference to admission of evidence was the ruling of the court in refusing to receive the evidence of William C. Reimer, a lawyer at Elkader. Mr. Reimer states plaintiff called on him in connection with his income tax, and at that time told him about the unpaid wage claim of approximately $1400 which he had against Doctor Grant. Reimer states plaintiff retained him to see defendant about the claim. Defendant testified Reimer did see him about plaintiff's claim. When defendant placed Mr. Reimer on the witness stand and proceeded to examine him concerning conversations with plaintiff, attorney for plaintiff objected on the ground that a confidential relationship between client and attorney existed, and any conversations between them were privileged. Appellant contended because plaintiff had testified "Reimer did nothing" the privilege had been waived. The trial court sustained the objections. Appellant never proffered the testimony of the witness Reimer and the record does not show what appellant expected to prove. This is not important, because on the basis of privilege we hold the trial court was correct in sustaining objection to this testimony. The record clearly shows plaintiff had retained Reimer and there was a relationship existing which created a privilege. Section 622.10, Iowa Code, 1954. Lauer v. Banning, 140 Iowa 319, 118 N.W. 446.

■ II. The second assignment of error by appellant is that the trial court should have directed a verdict for defendant, on the basis that there was a variance in the testimony offered by plaintiff. The argument of appellant is that plaintiff testified concerning an oral agreement with defendant. It is then his claim that Sargent's testimony was so completely at variance with plaintiff's testimony that there was inconsistency in all testimony offered by plaintiff in support of his cause of action. Sargent testified plaintiff came to work through arrangement with defendant. His testimony pertains to the arrangement between him and defendant, and he makes no claim that plaintiff was a party to such arrangement. It is true the testimony of Sargent to a certain extent supports the position of defendant, as to the arrangement between defendant and tenant, but as the trial court held throughout the case, the arrangement between defendant and the tenant was a different matter from the cause of action of plaintiff against defendant. We have held in connection with presentation of evidence in a case that some variance in the testimony offered by a party to the action is not fatal to the position of the litigant. Thorn & Stein v. Moore, 21 Iowa 285, 287; Snittjer Grain Co. v. Koch, 246 Iowa 1118, 1128, 71 N.W.2d 29, 34.

■ In the early case of Thorn & Stein v. Moore, supra, we said: "Where a party voluntarily puts a witness on the stand to testify in his own behalf, he is thereby estopped from assailing his general character for truth and veracity, or from impeaching him. But he is not estopped from showing that the facts are different from the testimony of such witness."

In the recent case of Snittjer Grain Co. v. Koch, supra, we said: "Mere testimony of a party on cross-examination, unfavorable to his own cause and in contradiction of other evidence in his favor, is not ordinarily conclusive. Unless it be of such a nature or under such circumstances as to permit the court to classify it as a 'judicial admission' it merely creates a conflict in the evidence to be resolved as a question of fact."

In fact there is no serious variance as to the principal issue in the case. The variance only appears because defendant's contention as to his agreement with his tenant crept into the case through the tenant's testimony. The trial court properly ruled

this out as an issue. Plaintiff clearly alleged a cause of action against defendant in his petition. In his testimony he offered evidence sustaining his position. In view of the pleading and testimony it was the duty of the trial court to submit the case to the jury. We hold there was no error in overruling a motion for directed verdict.

III. Some days after filing motion for new trial on the basis of the first two errors alleged, appellant filed amendment to the motion alleging misconduct on the part of certain jurors. The amendment was filed after the date stipulated by the parties for filing motion for new trial, and appellee contends the allegations of an amendment must be germane to the grounds alleged in the original motion, or the allegation is filed too late. There is some basis for this in Haman v. Preston, 186 Iowa 1292, 173 N.W. 894, and in Mitchell v. Heaton, 227 Iowa 1071, 290 N.W. 39. However, the trial court gave consideration to the matters alleged in the amendment and we desire to do so.

The alleged misconduct on the part of some jurors is not a matter with which plaintiff or plaintiff's attorney had any connection. It pertains to actions of certain jurors and conversations in their presence. Appellant supports his allegations by affidavits and by presentation of jurors as witnesses at time of hearing on motion for new trial. An affidavit was made by a deputy sheriff who stated he heard juror Penhollow say in the rest room while the trial of the case was in progress, "I have made up my mind." The other two affidavits were made by Adrian Ward and Alvin Klinkenberg. They stated juror Penhollow said to them after the trial was concluded: "Doc got beat", and that "it was good enough for him", and "that he had had it in for Doc and thought it was a chance to get even with him." In resistance to the affidavits of affiants Ward and Klinkenberg, juror Penhollow made an affidavit in which he stated he was not acquainted with defendant other than as he had seen him in the courtroom during the trial; he had no personal feeling or prejudice against Doctor Grant; he did not discuss the case during the trial with anyone else and did not attempt to influence any other jurors in arriving at their verdict. The final paragraph is as follows:

"Affiant further states that he reached his conclusion in the matter solely from the evidence presented in Court. That he did not have it in for Doc Grant and affiant states he did not state to Adrian Ward or anyone else that he had it in for Doc Grant for some time before the trial."

The other allegations with reference to misconduct pertain to a statement made in. the presence of four jurors in a café while they were eating lunch, and a discussion among some jurors in the courtroom or hall of the courthouse while the case was in progress. The testimony is brief:

Juror Elsie Kaiser testified:

"One of the days the case was being tried three other jurors and I were eating at a table in the Bridge Café in Elkader. Mrs. Lois Hamann and Mrs. Florence Hazlet were two of the others, but I can't remember the third.

"Q. At that time and place, do you recall that someone referred to the defendant, Doctor Grant? A. I heard his name mentioned there, but don't recall who spoke of him at that time. Q. What was the substance of what was said about the defendant at that time in the presence and hearing of you people at the table? A. Well, I don't know just how it was said, but it meant the same thing as though he had gotten rid of his wife at a certain time. His first wife, I think they said. Q. What was your understanding of the statement that he had gotten rid of his first wife?

"Appellee: Object to that for the reasons last urged and for the further reason that it would be the opinion and conclusion of the witness, hearsay, what her understanding was is immaterial.

"The Court: Sustained. She can say what she heard.

"Q. Were those the exact words said there in the presence of the other jurors and you?

"Appellee: Same objection and that the question has been asked and answered, witness said she didn't recall what it was, cross-examination of his own witness.

"The Court: She can give the words.

"A. I couldn't do that. I don't know just what was said."

Juror Una Porter testified:

"During the trial recesses were taken when the members of the jury remained in the courtroom.

"Q. During one recess in which the jurors remained in the courtroom did you hear any talk in that courtroom about a rumor that Doctor Grant had killed his wife? A. Yes, I heard something about that. Q. Did that happen while the trial was in progress, but the Court was away from the courtroom and the jurors were sitting around the courtroom? A. I don't remember whether we were here or out in the hall. Q. Do you remember whether other jurors were present when that talk took place? A. Yes, others were present. Q. Do you remember about how many other jurors were there? A. I just don't know. I know that one, Ernest Groth, was there. I don't know how many others. I heard the talk just that one time. It was after the case had started and before the Court had submitted it to the jury."

Juror Lois Hamann testified:

"I recall eating in the Bridge Café, Elkader, with Elsie Kaiser and other jurors during the trial, after I had been sworn as a juror and before the case had been submitted to us, but do not recall who the other jurors in the café were.

"Q. State what you heard in the Bridge Café regarding Doctor Grant on that date. A. I couldn't remember the exact words. I wouldn't want to try to repeat the exact words. What it was was just rumor, or so to speak. Q. What was the substance of what you heard? A. Well, they were just statements as to him. I don't know what to say. I don't remember the exact words. There were some statements made. There were accusations that he had done something about his first wife. I don't know. Q. And what was it that he had done about his first wife?

"Appellee: Same objection, leading, assuming facts not in the record.

"The Court: She may say if she knows.

"A. I don't know. Q. What did the words you heard about Doctor Grant and his wife refer to?

404

"Appellee: Same objection.

"The Court: If you can recall the words, you better give that, or the substance, but not your interpretation.

"A. Well, that's why I don't see—when I can't recall, it would be my own interpretation, why I should answer the question other than I don't know."

 We have held in many cases that the trial court has wide discretion as to motion for new trial. He heard the testimony of all witnesses and had an opportunity to observe their demeanor, and frankness or lack thereof. It is only when evidence is presented which clearly shows the trial court has abused his discretion that we interfere. No legal principle is better established, nor has been more consistently followed, throughout more than 100 years of judicial history of Iowa. Humphreys v. Hoyt (1854), 4 (G. Greene) Iowa 245; Scott v. Hawk, 105 Iowa 467, 75 N.W. 368; Greene v. Lagerquist, 217 Iowa 718, 252 N.W. 94; Jordan v. Schantz, 220 Iowa 1251, 264 N.W. 259; Egy v. Winterset Motor Co., 231 Iowa 680, 2 N.W.2d 93; Loughman v. Couchman, 243 Iowa 718, 53 N.W.2d 286; Farmers Ins. Exch. v. Moores (1956), 247 Iowa 1181, 78 N.W.2d 518.

 The ultimate question in connection with the affidavits and the testimony of the jurors is whether or not there were incidents creating prejudice against defendant, of sufficient weight to influence the verdict of the jury. The statement in the affidavit of the deputy sheriff concerning juror Penhollow would not justify a new trial, even if made, because a juror may hear part of the evidence and make a certain decision, and may later hear all the evidence as the trial progresses, and arrive at a contrary final decision. As long as the verdict is based on the evidence there is no reversible error in a statement of this type. State v. Baughman, 111 Iowa 71, 76, 82 N.W. 452, 454. In this case we stated at page 74 of 111 Iowa, page 453 of 82 N.W.:

"From the affidavit of Towne it appears that during the trial a juror stated, in conversation at the former's home, in substance, that he was convinced of the defendant's guilt, and that it would require a great deal of evidence to change his

mind; and, further, that he understood that defendant's father had been guilty of the same crime, and had run away. Towne claims to have advised him not to talk that way, as evidence might be offered to change his conclusions, and that the juror stated 'it couldn't be done.' The rule generally laid down is that the irregularity, to raise a presumption of prejudice in the absence of connection therewith by either party, must be such as has a natural tendency to disqualify the juror for the proper and unbiased discharge of his duties. * * * If a juror inadvertently mentions the case, or indicates his convictions at the time being to a person in no way connected with the trial, or interested in the result, and by whom no attempt to influence is made, it does not follow that, because of such opinion, he will turn a deaf ear to evidence subsequently given on the part of the defendant."

As to affidavits of affiants Ward and Klinkenberg, the statements were categorically denied by Penhollow. Appellant contends they were not fully denied, but Penhollow's affidavit denied all substantial and important matters involved. We cannot accept the Ward and Klinkenberg affidavits as conclusive, in view of the counteraffidavit. In case of Modern Heat & Power Co. v. Bishop Steamotor Corp., 239 Iowa 1267, 1270, 34 N.W.2d 581, 583, we said: "Plaintiff has asked us to consider and accept as true many statements contained in the affidavits filed by it but which are denied in counteraffidavits. This we cannot do."

We have set forth the questions and answers concerning the charge that statements were made in the presence of jurors that Doctor Grant, the defendant, killed his first wife. Our reason for showing these questions and answers is that it appears from them that the jurors considered the statements as only rumors, and gave them very little thought, and certainly no prejudicial thought as far as defendant was concerned. In order to justify a new trial on the basis of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable did, influence the verdict. This is not shown here. We have considered similar questions in several cases. Montgomery v. Hanson, 122 Iowa 222, 97 N.W. 1081; Ayrhart v. Wilhelmy, 135 Iowa 290, 112 N.W. 782; Olson v.

Des Moines City Ry. Co., 186 Iowa 384, 170 N.W. 466; Schnathorst v. Williams, 240 Iowa 561, 36 N.W.2d 739, 10 A. L. R.2d 1199.

In Montgomery v. Hanson, supra, we stated at page 224 of 122 Iowa, page 1082 of 97 N.W.: "Defendant moved to set aside the verdict and for a new trial on the ground of misconduct of members of the jury. The misconduct alleged was, first, that a juror during a recess of court was present at a conversation between outsiders in which the merits of the case were discussed; * * * With reference to the first of these allegations, it is enough to say that it is wholly insufficient, for the reason that what was shown did not amount to misconduct, or appear to have been prejudicial. The conversation was not directed to the juror, nor did any of the parties know that a juror was within hearing; and there is no showing whatever that the juror was influenced by what was said, or that he in any way acted improperly."

In Ayrhart v. Wilhelmy, supra, we said at page 295 of 135 Iowa, page 783 of 112 N.W.: "Good taste and due regard for the proprieties, doubtless, dictate that jurors and parties avoid familiar intercourse pending the trial and disposition of a case. They should be careful not only to avoid actual impropriety, but to keep themselves clear of the very appearance of evil; but it is inevitable that they should be brought into frequent contact in hotels and other public places, and the fact that they sit at the same table in the dining room, or are drawn into the same group of persons in conversation, or take part with others in the various means of lawful recreation going on during the hours of recess, ought not to be regarded as reprehensible misconduct, so long as this is publicly and openly done, without any attempt by any one to abuse such opportunity for the purpose of influencing a juror's verdict."

In Schnathorst v. Williams, supra, which was affirmed, this court stated at page 583 of 240 Iowa, page 751 of 36 N.W.2d: "One lady attended a social gathering at Lynnville, in the vicinity of which defendants formerly lived. Several of those at the party were discussing the case and made remarks adverse to the reputations and conduct of the defendants, and mentioned that they were giving plaintiff a 'dirty deal.' She told them

she was a juror in the case and asked them to stop talking about it. When they did not desist she left the room. The next morning she remarked about the occurrence to another lady juror but did not discuss it. After the jury had agreed and the verdict had been signed and they were waiting to report, she told the jury of the occurrence. The court had a hearing on the matter on affidavits and oral examination of the jurors, and ruled that there was no prejudicial conduct and no basis for a new trial."

The trial court exercised its discretion as to motion for new trial wisely in overruling the motion. We hold the court did not abuse its discretion. The case is affirmed.—Affirmed.

All JUSTICES concur.