Lawrence M. STAM, Appellee,

v.

Merlyn CANNON, Appellant.

No. 53610.

Supreme Court of Iowa.

May 5, 1970.

Ross H. Sidney, Des Moines, and Robert L. Fulton, Leon, for appellant.

James W. Brown, Osceola, for appellee.

UHLENHOPP, Justice.

We have here to decide several questions which arose in the trial of a rear-end automobile collision case.

Lawrence M. and Wilma Stam are husband and wife. For several years prior to the collision they operated a farm which they were buying on contract. For a time Mr. Stam also worked in a sale barn and had a trucking business. Until shortly before the collision, Mrs. Stam had not worked off the farm for several years. Their income went into a common bank account.

As of the time of the collision on February 25, 1966, both of the Stams had employment off the farm. Mr. Stam ran a caterpillar tractor for Don Christenson, an earth mover. At the time Christenson was removing overlay in a rock quarry of Jackson's Incorporated. Mrs. Stam was weighmaster in the quarry for Jackson's. Christenson's earth moving business and Jackson's quarry were separate enterprises.

Previous to September 29, 1965, two motor vehicles were titled in Mrs. Stam's name, a pickup truck and a Valiant car. Mrs. Stam saw an advertisement for the sale of an Econoline truck by White's Motor Company of Lamoni, Iowa, and on that date she traded the pickup truck plus cash for the Econoline. The cash difference was paid from funds which were borrowed from a bank on a note signed by both Stams. The note was eventually paid from funds in the common bank account. Title to the Econoline was taken in Mrs. Stam's name.

Both spouses used the Econoline and Valiant as needed. When Mrs. Stam drove and Mr. Stam was along, she complied with his wishes about driving, if he expressed any. Usually he did not talk much.

On the morning of February 25, 1966, Mr. and Mrs. Stam were traveling south in the Econoline on highway 204, he to his job with Christenson and she to hers with Jackson's. She was driving. South of Garden Grove, Iowa, they came upon Merlyn Cannon, driving his Plymouth station wagon in the same direction at a slower speed.

The previous day Mr. Cannon had taken a tractor tire to Garden Grove for repair

and on the way back had lost the tire out of his car. On the morning of the collision he and his wife were going over the route in search of the tire. They were watching the ditches.

The jury could find that Mrs. Stam was driving about 50 miles per hour and that she slowed down and followed Cannon through a no passing zone about two or three car lengths to the rear. After traversing that zone she speeded up to pass going downhill, but Mr. Cannon also increased· his speed somewhat. She was unable to pass before the next no passing zone, and turned in behind him again. At about that time Cannon saw his lost tire in the left ditch, was temporarily distracted from his driving, and put on his brakes; and his car came over toward the yellow line.

The jury could find that Mrs. Stam was about 60 feet behind Cannon when she saw his brake lights go on, and according to her, "things happened pretty fast." She slammed on the brakes and swerved left to avoid the Plymouth. But since the Plymouth also moved left when Cannon was preoccupied with the tire, the right front of the Econoline struck the rear of the Plymouth 11 inches in from the left corner. Mr. Stam sustained personal injuries for which this action was brought.

Subsequently the damaged Econoline was replaced by another vehicle, which was titled in Mr. Stam.

On submission of the case, the trial court instructed that Mrs. Stam's negligence would not preclude recovery by Mr. Stam unless it was the sole proximate cause; Cannon would be negligent if he materially reduced his speed when he knew or should have known the other car was so close a collision would probably result; Cannon was obligated to drive at a careful speed in the light of a number of enumerated circumstances; and Cannon was required to have his car under control. The court did not submit Mr. Stam's charge that Cannon was negligent in failing to give a proper signal.

Counsel agreed to a sealed verdict, and they and the judge departed for their respective homes in other counties. The jury had difficulty deciding the case, and about 11:00 p. m. the foreman asked the bailiffs to let him telephone the judge. This was permitted, and the foreman informed the judge the jury was having some trouble with liability. The judge told the foreman to go back and read the instructions, and the conversation ended. Within an hour the jury returned a verdict for Stam.

Cannon moved for a new trial, but the trial court denied one. Hence this appeal by Cannon.

Six legal problems are presented: (1) Could the jury have found that Stam was owner or co-owner of the Econoline? (2) Was joint venture by Stams for the jury? (3) Should the trial court have covered the matter of signal in connection with the instruction on reduction of speed? (4) Did the trial court unduly emphasize speed? (5) Was there evidence of lack of control? and (6) Did the communication between the judge and foreman require a new trial?

■ I. As to ownership of the Econoline, Cannon contends Stam could have been found at least co-owner so as to have a "right of control" under Phillips v. Foster, 252 Iowa 1075, 109 N.W.2d 604. Cannon thus seeks to impute Mrs. Stam's negligence to Mr. Stam. The trial court rejected the contention.

In our statutes on motor vehicles it is provided by Code, 1966, section 321.1(36):

" 'Owner' means a person who holds the legal title of a vehicle, or in the event a vehicle is the subject of a Security Agreement with an immediate right of possession vested in the debtor, then such debtor shall be deemed the owner for the purpose of this chapter."

It is further provided by section 321.45 (2):

"No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable consideration [with four exceptions not applicable here]. Except in the above enumerated cases, no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter."

When White's Motor Company sold the Econoline, title was placed in Mrs. Stam. No one suggests this was done over Mr. Stam's protest or that he was defrauded in any way. Title was simply placed where Stams wanted it placed. Under the plain language of the statute, Mrs. Stam was the owner and no court in any case at law or in equity could recognize any other right, title, claim, or interest. Calhoun v. Farm Bureau Mutual Ins. Co., 255 Iowa 1375, 125 N.W.2d 121. The trial court correctly so held.

 II. As to joint venture, Cannon contends that Stams were engaged in a common enterprise so that Mrs. Stam's negligence was Mr. Stam's negligence. Again the trial court rejected the contention. Is there evidence of joint venture here? Cases in which the passenger owned the car in which he was riding may be placed aside. Likewise to be put aside are cases involving a passenger's own negligence in not exerting power which he in fact had over the driver, apart from a legal

right of control. Restatement, Torts 2d sec. 495. The trial court covered Stam's own duty of care in instruction 9. The issue here relates to Mrs. Stam's negligence and to charging it to Mr. Stam.

At an early day this court rejected the rule in Thorogood v. Bryan, 8 C.B. 115, 137 Eng.Rep. 452. See Nesbit v. Town of Garner, 75 Iowa 314, 39 N.W. 516. Thus we start with the premise that a passenger ordinarily is not barred by his driver's negligence from recovering from a third person whose negligence proximately causes harm. Restatement, Torts 2d sec. 485.

To this general principle are exceptions, and one is joint venture. That exception is based on the passenger's "right of control" over the driver. It is frequently stated, "The fundamental doctrine controlling this question of joint adventure or common enterprise is not controlled by the fact that the parties are going to the same place on the same mission, but by whether or not the complaining party bore such relation to his associate as that he had the right of control in some manner over the means of locomotion." Stingley v. Crawford, 219 Iowa 509, 512, 258 N.W. 316, 318. But what relationships give the passenger the "right of control" under the law?

By the process of exclusion, a number of relationships may be eliminated. As Justice Weaver said for this court when joint venture was asserted in Bridenstine v. Iowa City Electric Ry., 181 Iowa 1124, 1133, 165 N.W. 435, 438, "Whatever may have been the rule of earlier years, the doctrine of imputed negligence has only a very restricted application in this state." Thus marital relationship does not itself give the right of control, though the spouses are proceeding to the same destination. Mathews v. Beyer, 254 Iowa 52, 116 N.W.2d 477. Contribution by the passenger by buying gasoline does not give him the right of control. Russell v. Chicago, R. I. & P. R. R., 251 Iowa 839, 102

N.W.2d 881. Showing the driver the way to his destination does not establish a "right" of control. Churchill v. Briggs, 225 Iowa 1187, 282 N.W. 280. Even joint possession of the car does not show right of control. Davidson v. Cooney, 259 Iowa 1278, 147 N.W.2d 819 (car lent to two girls).

In determining whether a relationship gives the right of control, the later decisions emphasize the presence or absence of a common pecuniary interest by the driver and passenger. Thus the common pecuniary element, and consequent right of control, were absent in Weller v. Fish Transport Co., 123 Conn. 49, 192 A. 317, and in Sherman v. Korff, 353 Mich. 387, 91 N.W.2d 485 (husband-wife cases). On the other hand, they were present in Howard v. Riley, 257 Wis. 594, 44 N.W.2d 552 (husband and wife viewing their motel to see if a dormer was satisfactory). The American Law Institute includes a common pecuniary interest among the elements. Restatement, Torts 2d sec. 491, comment c ("a community of pecuniary interest"). So does Prosser (Law of Torts (Third Ed.) 490–491), "Something in the nature of a common business, financial, or pecuniary interest in the objective of the journey is said to be essential." Harper and James would restrict joint venture to "situations closely resembling an ad hoc partnership for a business purpose." Law of Torts (1956) 1270.

The closest cases on the facts we have found are Clemens v. O'Brien, 85 N.J. Super. 404, 204 A.2d 895, and Brubaker v. Iowa County, 174 Wis. 574, 183 N.W. 690. In Clemens the spouses rode to work together. The husband ordinarily drove as far as his job and the wife drove on to hers. In holding they were not joint adventurers, the court said (85 N.J.Super. 416, 204 A.2d 901):

"In summary, we find no compelling basis for a determination that this State is bound to any rule barring a faultless automobile passenger's action against a negligent third person on the basis of imputation of the driver's negligence, by mere reason of their common interest in the purpose of their trip or any supposed shared right of control of the vehicle by the passenger, absent true agency of the driver for the passenger either on ordinary principles of agency or employment or arising out of a partnership or business joint adventure between the passenger and driver, and the trip's being taken in the course of the business."

A like result was reached in a somewhat similar situation in Brubaker. See also Carpenter v. Wolfe, 223 Iowa 417, 426, 273 N.W. 169, 174 ("This doctrine is based on the relation of agency existing between parties engaged in the common enterprise.").

In traveling to their respective jobs, coincidentally within the same quarry, Mr. and Mrs. Stam each had a pecuniary objective. But they were not going to the same job and they did not have a common pecuniary objective. It was not a "joint" venture, and the trial court rightly so held.

III. As to the instruction on reducing speed, Stam pleaded various charges of negligence against Cannon. In specification (c) he charged Cannon did not give a proper signal and in specification (j) that Cannon slowed down too quickly. On the other hand, Cannon pleaded various charges of negligence against Stams, but he did not plead negligence in failing to heed a proper signal.

The evidence disclosed that Cannon gave a signal by brake lights, and the trial court did not submit Mr. Stam's charge (c). But charge (j) was submitted in instruction 8, which required Stam to prove Cannon "materially reduced the speed of his motor vehicle when he knew, or in the exercise of ordinary care, should have known that the motor vehicle in which plaintiff was riding was behind him, and so close that the reduction of speed would likely result in a collision."

Cannon excepted to instruction 8 on the ground the trial court should have gone farther and explained the law on giving a signal upon reduction of speed. Cannon objected that the instruction would "permit the jury to in effect find that no person may reduce the speed of his vehicle on the highway under any circumstances irrespective of whether a signal was given or not, which is not a proper or correct statement of the law."

Two duties of Cannon were under consideration, a duty to signal and a duty not to slow down unreasonably quickly. A duty to signal is prescribed by Code, 1966, section 321.316. The trial court evidently believed Stam had not shown a violation of that duty. But, "The fact that a motorist gives a signal as required by statute does not necessarily relieve him from other duties in stopping or slowing down, or exonerate him from a charge of negligence." 60A C.J.S. Motor Vehicles § 301, p. 248. See Donahue v. Mazzoli, 27 Cal.App.2d 102, 105, 80 P.2d 743, 745 ("they were bound to comply with the provisions of the law (secs. 544 and 545, supra) regarding signals. But those sections prescribe cumulative duties and do not lessen the obligations of the defendants under general law."). See also Box v. Swindle, 306 F.2d 882, 885 (5 Cir.). There the court held that negligence in failing to signal was independent of negligence in stopping too suddenly "without allowing sufficient time for the Plaintiff's vehicle behind her to reduce speed and stop".

In instructing on the second duty, the trial court was not dealing with the duty to signal which had been removed from the case, and there was no occasion to expound on that subject. If Cannon stopped unreasonably quickly, the jury could find him negligent on that basis whether he signaled or not. Moreover, the court was dealing with Cannon's negligence, not with Stams' negligence. If Cannon thought the court should have enlarged on Stams' duties to heed the brake lights, he should have requested an instruction enlarging upon the duties of Mr. Stam and Mrs. Stam. Their duties were covered by the trial court, so far as raised by Cannon's answer and the evidence, in instructions 11 and 13 to 19, dealing with Stam's contributory negligence and with Mrs. Stam's negligence as the sole proximate cause. Nor can Cannon's objection be upheld that instruction 8 would permit the jury to find "that no person may reduce the speed of his vehicle on the highway under any circumstances irrespective of whether a signal was given or not". The court did not tell the jury that, but rather permitted a finding of negligence on specification (j) under the limited circumstances related in that instruction.

Cannon's authorities are inapposite. Harrington v. Fortman, 233 Iowa 92, 8 N.W.2d 713; Mongar v. Barnard, 248 Iowa 899, 82 N.W.2d 765; Jakeway v. Allen, 226 Iowa 13, 282 N.W. 374; Sanford v. Nesbitt, 234 Iowa 14, 11 N.W.2d 695; Law v. Hemmingsen, 249 Iowa 820, 89 N.W.2d 386; Kuehn v. Jenkins, 251 Iowa 718, 100 N.W.2d 610; and Gibbs v. Wilmeth, Iowa, 157 N.W.2d 93. In Harrington the plaintiff pleaded, adduced proof, and requested instructions on both failure to signal and stopping too suddenly, and this court held he was entitled to those instructions. In Mongar the defendant pleaded and adduced proof that he gave a left turn signal, and the plaintiff pleaded and adduced proof no signal was given. The trial court submitted only the plaintiff's claim. After concluding a left turn signal is sufficient for slowing and stopping, this court held the trial court should have submitted the defendant's plea he gave such a signal. Jakeway, Sanford, Law, Kuehn, and Gibbs repeat the familiar principles that the trial court must lay the issues before the jury with reasonably fullness and apply the legal principles to the evidence.

Instruction 8 properly stated Cannon's duty not to stop unreasonably quickly.

 IV. As to undue emphasis on speed, instruction 9 contains three para-

graphs. The first paragraph paraphrases the requirement of careful and prudent speed provided in the first paragraph of Code, 1966, section 321.285. The second paragraph enumerates various circumstances to be considered in connection with the rate of speed, and deals with speed which is less than reasonable. The final paragraph states a violation of this rule of the road is negligence. See Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552.

The instruction does not approach the overemphasis of the instructions in Evans v. Holsinger, 242 Iowa 990, 48 N.W.2d 250; Turbot v. Repp, 247 Iowa 69, 72 N.W.2d 565; or Clarke v. Hubbell, 249 Iowa 306, 86 N.W.2d 905. It was a proper one.

■ V. As to submission of lack of control by Cannon, the jury could find that when Cannon saw his tire in the ditch he was distracted from his driving, and his car came over toward the yellow line and was struck 11 inches in from its left rear corner.

The duty of control is often stated in terms of ability to stop, but it involves more. Guinn v. Millard Truck Lines, 257 Iowa 671, 678, 134 N.W.2d 549, 554 ("or change the direction of movement and divert or change the course as the circumstances require"); see Johnson v. Kinnan, 195 Iowa 720, 192 N.W.2d 863. The jury could reasonably find Cannon did not have control when he was distracted by the tire and his car went over toward the yellow line.

■ VI. Finally, as to the communication about the case between the jury foreman and the judge after submission, "* * * our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. * * *." Daniels v. Bloomquist, 258 Iowa 301, 306–307, 138 N.W.2d 868, 872. Trial judges ought to explain bailiffs' duties to them so that off the record communications between judges and jurors do not occur. 258 Iowa 307, 138 N.W.2d 872, "* * * vigilant efforts by the officers of the court to prevent such occurrences, * * *."

But judges, bailiffs and jurors are mortals, and occasional slips do occur. Here the jury was having trouble resolving the case and the bailiffs improperly permitted the foreman to telephone the judge about eleven o'clock at night. The foreman told the judge the jury was having trouble with liability. Unforewarned, what was the judge to say? He told the foreman to go back and read the instructions.

The situation is a far cry from Bloomquist, where the trial judge summoned the foreman before him for five to seven minutes and the foreman returned and told the jury they would have to reach a verdict. The bailiffs here ought not to have let the foreman call the judge. If the jury desired to communicate with the judge, the bailiffs ought to have so apprised the judge themselves. But the communication between the foreman and the judge was not of sufficient significance to overturn the verdict. Ayrhart v. Wilhelmy, 135 Iowa 290, 112 N.W. 782; Anderson v. Evans, 168 Neb. 373, 96 N.W.2d 44. See also, Jacobsen v. Gamber, 249 Iowa 99, 86 N.W.2d 147.

Affirmed.

All Justices concur.