**Bernice RAGEE and Herman Ragee, Appellees,**

v.

**ARCHBOLD LADDER CO., Appellant.**

No. 89–1537.

Supreme Court of Iowa.

June 19, 1991.

Timothy McCarthy II of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Lad Grove, Ames, for appellees.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant Archbold Ladder Company appeals from jury verdict and judgment finding it liable, under the theory of res ipsa loquitur, for damages plaintiffs Bernice and Herman Ragee sustained as a result of Bernice falling from a ladder manufactured by defendant. Defendant contends the district court violated Iowa Rule of Civil Procedure 197 when, while the jury was deliberating, it instructed the jury without first advising or consulting with defendant's attorney. Defendant also contends the court erred in overruling its directed verdict motion on the theory of res ipsa loquitur.

We, now, affirm the district court's rulings on the issues raised by defendant. Thus, we need not consider issues raised in a cross-appeal by plaintiff.

I. *Communicating with the jury.* Ragees' suit against Archbold was tried in Nevada, Iowa, and submitted to the jury on Friday, July 21, 1989. Once the case had been submitted and the jury was deliberating, all counsel connected with the suit left the courthouse. The judge went to Boone, plaintiffs' attorney went to Ames and defendant's attorney returned to Des Moines. A court attendant remained with the jury to monitor its actions.

During the jury's deliberations, the jury foreman handed the court attendant a written question addressed to the judge. Upon receiving the note, the court attendant telephoned the judge and read him the jury's question, which asked: "Would it be possible to view the videotape of Dr. Burdette's[1] tests? The jury is not exactly sure what was viewed. Five are in agreement three are not. It is very essential." The judge, without contacting either party's attorney, dictated the following response, which he instructed the court attendant to read to the jury: "Will not get to view the videotape tonight. If the jury wants to return Monday morning the judge will address that to the lawyers then."

Later, the foreman delivered a second note to the court attendant. The court attendant again telephoned the judge and related the following question: "Clarification regarding 50% or less of the total fault by Mrs. Ragee, and do we set the damages amount. We are questioning paragraph 2 of instruction 15." The court, without contacting counsel for either side, dictated the following response, which the court attendant read to the jury:

The instructions say that if they believe that both parties are at fault they then have to determine the percent of fault attributable to each of them. It has to be a total of 100%. Then they have to fix the total damages. The court will make the distribution based upon the total damage multiplied by the percent of fault attributable to the defendants. If any of that damage is for future damage they have to set that out in question 7.

---

**1.** Dr. Burdette was called by defendant to testify concerning the safety of Ragees' ladder.

Turn to 5, 6 or 7 on verdict forms 1, 2 or 3. They are all the same.

Defendant, relying on Iowa Rule of Civil Procedure 197, argues that the district court committed reversible error when, after the jury had begun its deliberations, it instructed the jury without first contacting defendant's attorney. Rule 197 states:

> While the jury is deliberating, the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Such instruction shall be in writing, be filed as other instructions in the case, and be a part of the record and any objections thereto shall be made in a motion for new trial.

There is no dispute that the court did not comply with the terms of rule 197. The post-submission instructions in this case were made without counsel being present or notified.

The parties, however, dispute the consequences that stem from failure to comply with rule 197. Defendant argues that prejudice is presumed when a violation of rule 197 is established and a new trial should automatically be granted. Plaintiffs' position, on the other hand, is that we need not order a new trial unless defendant can demonstrate that it was prejudiced by the court's failure to comply with rule 197.

Our civil cases establish two lines of authority addressing alleged improper communications between judge and jury. Some of our cases indicate that although communication between judge and jury without notice to counsel is error, it is not reversible error when no prejudice results. *See Stam v. Cannon*, 176 N.W.2d 794, 800 (Iowa 1970); *see also Ayrhart v. Wilhelmy*, 135 Iowa 290, 295, 112 N.W. 782, 783 (1907). In *Stam*, we recognized the reality that occasional improper communications between judge and jury will occur. *Stam*, 176 N.W.2d at 800. We noted that while we do not approve of such communications, we will not upset a verdict if the communications are not of sufficient significance to justify overturning the verdict. *Id.*

Other cases appear to indicate that, in some instances, communications between judge and jury without notifying counsel

for both sides is sufficient, without any evidence of prejudice, to establish the need for a new trial, even when the remarks appear innocent. *See Maier v. Illinois Central Railroad Co.*, 234 N.W.2d 388, 395 (Iowa 1975); *see also Daniels v. Bloomquist*, 258 Iowa 301, 306–07, 138 N.W.2d 868, 872 (1965); *Davis v. Fish*, 1 Greene 406, 410 (Iowa 1848). In *Daniels*, we stated that our primary concern in not allowing private communications is not the injury or injustice which could result to the litigants. *Daniels*, 258 Iowa at 306, 138 N.W.2d at 872. Rather, we focused on protecting the integrity of the judicial system. *Id.* at 306–07, 138 N.W.2d at 872. We noted that: "In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from improper influences, but from the appearance thereof." *Id.* at 306, 138 N.W.2d at 872.

■ The cases mentioned previously provide two distinct considerations in analyzing communications in violation of rule 197. First, the procedure utilized by the court in communicating with the jury must not compromise the integrity of the judicial system. Second, we will closely examine improper communications to determine if the party claiming error has demonstrated that it was prejudiced by the court's failure to comply with rule 197. This two-part inquiry maintains the judicial system's integrity and assures that all parties will receive a fair trial. Violation of either consideration may result in a new trial.

■ A. Several factors influence our conclusion that the communications in this case did not compromise the integrity of the judicial system. First, any appearance of improper influence was lessened by the fact that the jury initiated the communications. The court only communicated with the jury in response to questions submitted to it through the court attendant. Second, all communications between the court and the jury were written rather than oral. Third, the communications were preserved as part of the record, lessening any appear-

ance of impropriety. Finally, the court's responses to the jury's questions were delivered to the entire jury, thus, eliminating any danger that the foreman did not accurately relay the court's message to the rest of the jury.

The situation presented to us in this case, while clearly not in compliance with rule 197, did not create an appearance of impropriety such that a new trial is necessary to protect the integrity of the judicial system.

■ B. We must also determine if the communications between judge and jury tainted the jury's deliberations. Defendant argues that it was prejudiced because, prior to the instructions being given, it was unable to make any record concerning the additional instructions or even to object to the instructions on the record. Defendant was, however, given the opportunity to voice its objections in its motion for new trial. *See* Iowa R.Civ.P. 197.

Defendant concedes that the instructions given by the court were not erroneous and, more importantly, defendant does not seriously contend that the jury's deliberations were tainted in any manner by the court's improper communications. We agree with defendant that the court should have notified counsel prior to responding to the jury but, because defendant has not shown that it was prejudiced by the court's failure to do so, we see no need to remand this case for a new trial.

■ We realize that the standards set forth in this civil case differ from those applied in criminal cases. *See State v. Meyers*, 426 N.W.2d 614 (Iowa 1988). The different standards are necessitated by a criminal defendant's constitutional rights and by differing rules of procedure. *Compare* Iowa R.Civ.P. 197 *with* Iowa R.Crim.P. 18(5)(g). This includes a defendant's right, in criminal cases, to be present in connection with post-submission instruction procedures. Such presence is not necessitated in civil cases.

We also take this opportunity to reiterate that the situation which arose in this case could be avoided if the court requires counsel "to make themselves readily available to consult concerning, and to be present during, the court's communications with the jury unless such presence is specifically waived on the record." *Meyers*, 426 N.W.2d at 617.

■ Finally, while our holding affirms the judgment in this case because defendant has not shown it was prejudiced and the integrity of the court system was not compromised, we do not suggest that courts should follow the procedure of the present case in the future. Judges should make reasonable efforts to consult with counsel for the parties before responding in writing to the jury's questions, unless the parties otherwise agree.

II. *Res ipsa loquitur instruction.* At the close of plaintiffs' case, defendant moved for a directed verdict as to plaintiffs' theory of res ipsa loquitur. *See* Iowa R.Civ.P. 216. Defendant urged two grounds in support of its directed verdict motion: (a) that plaintiffs failed to introduce evidence establishing defendant's exclusive control of the ladder at the time of the negligent act, and (b) that plaintiffs failed to prove Bernice's injuries were not caused by her voluntary actions. The court reserved its ruling on this portion of defendant's directed verdict motion.

At the close of all evidence, defendant renewed its motion for directed verdict on the res ipsa loquitur claim on the same grounds previously urged. The court denied the motion and submitted plaintiffs' res ipsa loquitur claim to the jury. The jury returned a verdict finding defendant 50% at fault under the res ipsa loquitur theory.

Defendant later moved for judgment notwithstanding the verdict, contending the district court erred in failing to grant its directed verdict motion on the theory of res ipsa loquitur. Defendant, however, rather than urging the same arguments made in its directed verdict motion, asserted a new argument in its motion for judgment notwithstanding the verdict. Defendant contended that res ipsa loquitur does not apply when direct evidence as to the precise cause of the injury exists. The district

court overruled defendant's motion for judgment notwithstanding the verdict.

On appeal, defendant contends the court erred in overruling its motion for directed verdict and submitting the res ipsa loquitur theory for jury consideration. In support thereof, defendant urges only the ground first stated in its motion for judgment notwithstanding the verdict.

Plaintiffs contend we may not consider defendant's argument challenging the district court's ruling allowing the jury to consider the theory of res ipsa loquitur because the argument urged on appeal was made for the first time in defendant's motion for judgment notwithstanding the verdict.

 A motion for judgment notwithstanding the verdict must stand or fall on grounds urged in the movant's earlier motion for directed verdict. *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978); *Meeker v. City of Clinton,* 259 N.W.2d 822, 827 (Iowa 1977); *Peterson v. First Nat'l Bank,* 392 N.W.2d 158, 163 (Iowa App.1986) (error can only be preserved before the case is submitted to the jury; any preservation of error claims founded on events after the verdict cannot be considered). Our review would only be proper as to those grounds raised in defendant's directed verdict motion. *Watson,* 272 N.W.2d at 461; *Meeker,* 259 N.W.2d at 828; *see also Jacobson v. Benson Motors, Inc.,* 216 N.W.2d 396, 405 (Iowa 1974) (argument, made for the first time as part of movant's after-the-verdict motion for new trial, came too late for consideration on appeal); *Miller v. Young,* 168 N.W.2d 45, 49–50 (Iowa 1969) (contentions raised for the first time in movant's motion for judgment notwithstanding the verdict may not be urged on appeal); *Peterson,* 392 N.W.2d at 164 (error must be raised with specificity in directed verdict motion); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 910 (Iowa App.1982) (directed verdict motion challenging the sufficiency of evidence of notice did not preserve movant's argument that defendant failed to plead notice); *Stortenbecker v. Goos,* 310 N.W.2d 535, 537 (Iowa App.1981) (motion for directed verdict on issue of negligence

was too general to preserve contention, that driver of vehicle violated the right-of-way doctrine for narrow places in the roadway, raised for the first time in movant's motion for judgment notwithstanding the verdict).

Because defendant's present argument challenging the court's ruling denying defendant's directed verdict motion on the issue of res ipsa loquitur was not raised in defendant's directed verdict motion, we may not now consider it on appeal. Thus, we find no error as to this assignment.

III. *Disposition.* All other issues raised have been considered, and we find them without merit or unnecessary to discuss.

We affirm the district court judgment.

AFFIRMED.